UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-22197-MC-UNA

IN THE MATTER OF THE
EXTRADITION OF RICARDO
ALBERTO MARTINELLI BERROCAL
_____/

**RICARDO MARTINELLI'S SUPPLEMENTAL MEMORANDUM
ON SPECIAL CIRCUMSTANCES SUPPORTING RELEASE ON BAIL**

As President Martinelli detailed in his initial bond motion, the "wiretapping" charges against him are meritless, as best illustrated by the speculative nature of Panama's apparent key piece of evidence, a belated affidavit from Ismael Pitti that is based on "information and belief" and not even part of the record in Panama. Now, after further review of the nearly 3000 pages of documents submitted in support of Panama's extradition case, a review that is ongoing, it is apparent that the documents not only fail to support the extradition request, they undermine it by exposing both the lack of probable cause, and Panama's attempts to mislead this Court.

This is illustrated in Prosecuting Magistrate Diaz's misrepresentations and omissions regarding the "Pegasus" espionage equipment that supposedly played the central role in the alleged surveillance scheme. Panama has no wiretapping case. So, in his affidavit in support of extradition, Diaz attempts to buttress the embezzlement charges by claiming that $13,475,000 in public funds intended for "improving the quality of life of the underprivileged people" were used to buy surveillance equipment called Pegasus from a company known as MLM Protection Ltd and that this MLM equipment was used to intercept cell phone communications.

These statements are demonstrably false, and Diaz misleadingly omits facts that expose fatal defects in the trumped-up embezzlement charges. The documents submitted by Panama show that the Pegasus equipment was bought from an entirely different company, NSO Group

Technologies Ltd., and, critically, there is zero proof that public funds were used to buy the equipment. The MLM equipment did not, in fact, intercept cell phone communications. And Diaz omits that the governmental audit of the purchase and alleged loss of the MLM equipment failed to even *mention* President Martinelli, let alone implicate him in any crimes or responsibility for the equipment.

President Martinelli submits that the lack of probable cause in support of the charges, and Panama's clear misrepresentation of the record evidence provides additional special circumstances entitling him to a bond

## I.  Facts[1]

**A.   The MLM Contract and the "PSS" Equipment**

In 2010, Panama entered into a contract with an Israeli company called "MLM Protection LTD." Audit Report No. 03-003-2015-DAF, RAMB000687-775, at RAMB000692 ("Attachment A"). The contract involved MLM's "[p]rovision of technological equipment, installation, training and maintenance services[.]" *Id.* In terms of the technological equipment, it included something called the "PSS Pc Surveillance System." MLM Proposal for Intelligence Technologies, RAMB000937-972, at RAMB000938 ("Attachment B"). MLM represented that the PSS equipment could be used to infiltrate "selected targeted computers" and covertly gather from those computers things like "raw data, Excel sheets, mail messages, pictures and audio[.]" *Id.* at RAMB000939 (emphasis added). MLM did not represent that the PSS system could be used to

---

[1] The lion's share of the facts set out here can be found in Exhibit #1 to the government's Complaint. For the Court's convenience, however, President Martinelli has attached the materials upon which he relies. With respect to record pin citations, President Martinelli will reference the Bates stamp located at the bottom-left of the documents.

infiltrate or intercept wireless devices in any way. *See id.*[2] The cost of the MLM equipment, which included the PSS equipment, was $13,475,000.00. Attachment A at RAMB000692. Panama has provided payment records that show that Panama used public funds to buy the MLM equipment. *See generally*, Attach. A.

In May 2015, a governmental entity, the General Comptrollership of the Republic of Panama, conducted an audit of the purchase and custody of the MLM equipment. *See id*. The audit identified nine government employees as having had responsibility for the purchase and custody of the MLM equipment. *Id.* at RAMB000765-775. This list of employees does *not* include President Martinelli or, for that matter, any of the members of Panama's National Security Council that were allegedly involved in an illegal wiretapping scheme. *See id.* The audit report says nothing about "Pegasus" or "NSO Group Technologies Ltd." *See id.* Notably, Panamanian anticorruption prosecutors also investigated the alleged loss of the MLM Equipment. *See* Aff. of Alejandro Perez (July 3, 2017) ("Attachment C"). The prosecutors charged only two of the nine individuals identified in the audit, Gustavo Perez and Giacomo Tamburelli. *Id.* at ¶12. Prosecutors did *not* charge National Security Council employees Ronny Rodriguez, William Pitti, or Ismael Pitti with any embezzlement crimes associated with the MLM equipment. *See id.*

B. **The NSO Contract and the "Pegasus" Equipment**

In 2012, the National Security Council entered into a *different* contract with a *different* Israeli company called "NSO Group Technologies Ltd." NSO Contract Materials, RAMB000614-

---

[2] The MLM contract also included something called "Circles Technology," which was something different than the PSS Pc Surveillance System. *Id.* at RAMB000944. According to the MLM proposal, the Circles Technology was capable of tracking the location of a cell phone. *Id.* at RAMB000949. But the MLM proposal did not say that the Circles Technology could extract data from cell phones, surreptitiously record cell phone communications, or otherwise infiltrate cell phones. *See id.*

622 ("Attachment D").  This contract involved NSO's provision of the "Pegasus System."  *Id.* at RAMB000614.  The contract stated that the purpose of the Pegasus equipment was "[c]ollecting and gathering information <u>from mobile devices</u>[.]"  *Id.* at RAMB000621 (emphasis added).  The cost of the Pegasus equipment was $8,000,000.00.  *Id.* at RAMB000614.

In contrast with the payment documentation provided in connection with the purchase of the MLM equipment, Panama failed to produce *any* payment documentation with respect to the NSO Group's Pegasus equipment.

In August 2015, Panamanian anticorruption prosecutors commenced an investigation into the Pegasus equipment supplied by the NSO Group.  Attach. C at ¶¶15-18.  This investigation includes information that a private company called Caribbean Holdings sent money to the NSO Group.  *Id.* at ¶18.

C.  **Witness Number 8430145 Testifies that the National Security Council Used NSO Equipment (i.e., "Pegasus") to Spy on Individuals**

In August 2014, a witness identified only by a number, 8430145, provided a sworn statement to Panamanian authorities.  Sworn Statement of Witness 8430145, RAMB000364-368, at RAMB000364 ("Attachment E").  This witness stated that an "Israeli company" called the "NSO Group" had provided the National Security Council with "equipment used in the last two years for clandestinely wiretapping <u>of telephone</u> [sic] to [sic] several personalities."  *Id.* at RAMB000364-365 (emphasis added).  The witness described this equipment as "three computer desktops that were connected to a server[.]"  *Id.* at RAMB000365. Using this equipment, the witness claimed, the National Security Council could capture information from victims' cellular phones, including "telephone books," "information in the memory cards," "the location of the telephone," and "e-mail accounts that were configured to said mobile devices."  *Id.* at RAMB000364-365.

The witness also identified the NSO Group representatives who had both installed the equipment and trained the National Security Council representatives on it. *Id.* at RAMB000364, RAMB000367. Specifically, the witness named "Martin Berenstein," "a[n] Uruguayan contact," and "Sharon Oknin." *Id.* at RAMB000367.

Ultimately, according to the witness, after the "Presidential elections," the equipment was "entirely dismantled[.]" *Id.* at RAMB000365-366. The witness said that Ronny Rodriguez and William Pitti[3] loaded the "computers and servers . . . into a white van-type vehicle" and took them to an unknown destination and that, days later, another individual took a "rack" out of the National Security Council building. *Id.* at RAMB000366.

Witness 8430145 makes no mention of MLM, MLM equipment, or MLM representatives.

D. **Another Secret Witness States that the National Security Council Used NSO Equipment (i.e., "Pegasus") to Spy on Individuals**

In addition to providing a sworn statement to the Panamanian authorities, witness 8430145 also handed over a "Maxell DVD-R" compact disc. *Id.* at RAMB000366. On this disc was a video of a confidential informant. Transcription Report of on Film Views [sic], RAMB000244-255, at RAMB000246 ("Attachment F").

Like witness 8430145, the informant, who claimed to have "firsthand" knowledge of the National Security Council's illegal activities, identified Berenstein, the NSO Group representative, as the person who installed the equipment that had been used to conduct the illegal surveillance. *Id.* at RAMB000244-245. The informant identified the equipment as being housed in building "150" and as including "three (3) flat screen desktops with their mouses, its [sic] keyboards, its [sic] towers, its screens . . . . [and] a server placed in the black rack." *Id.* at RAMB000245. Like

---

[3] The witness uses the code names for Mr. Rodriguez and Mr. W. Pitti, which are purportedly "Didier" and "Guillermo," respectively.

witness 8430145, the informant talked about the equipment's capabilities. *Id.* at RAMB000248. In addition to repeating some of the same features listed by witness 8430145, the informant noted that the equipment could access the "audio-environment that was picking up [sic] from the infected phone." *Id.*

The informant went on to note that Berenstein had trained Ronny Rodriguez and William Pitti how to use the surveillance equipment. *Id.* at RAMB000247. According to the extradition Complaint, these were the men who allegedly carried out the illegal surveillance. Compl. [D.E. 1], at 3.

The informant noted that the National Security Council supposedly used the equipment to infiltrate a victim's cell phone by, among other things, sending a text message to the victim that included a link, the clicking of which would give the National Security Council members access to the phone. Attach. F, at RAMB000250. The person also identified some of the supposed victims of the surveillance, which included judges, union groups, and others. *Id.* at RAMB000251-252.

Like witness 8430145, the informant mentioned that the equipment was loaded into a white van and that Ronny Rodriguez and William Pitti drove to an unknown location. *Id.* at RAMB000253-254. The informant further noted that, because the "rack" could not fit in the van, it was picked up a day later by a white pick-up truck and that Ronny Rodriguez and William Pitti took the "rack" to an unknown location. *Id.* at RAMB000254.

Like witness 8430145, the informant makes no mention of MLM, MLM equipment, or MLM representatives.

**E.    Ismael Pitti States that the National Security Council Used NSO Equipment (i.e., "Pegasus") to Spy on Individuals**

As President Martinelli has noted in a prior filing, the extradition Complaint appears to draw the lion's share of its facts from a belated affidavit provided by in Washington D.C. by Ismael Pitti. This affidavit was never produced in any of the Panamanian cases against President Martinelli.

Just like witness 8430145 and the informant, Ismael Pitti[4] identified Martin Berenstein and Sharon Oknin, who were NSO Group representatives and *not* MLM representatives, as having both "install[ed]" the "espionage equipment" and "train[ed]" the National Security Council how to use it. Aff. of I. Pitti, at ¶8 (Jan. 23, 2017) ("Attachment G"). Ismael Pitti noted that the "espionage equipment brought in by the Israelis consisted of three desktop computers, two portable laptop computers, and a server[.]" *Id.* at ¶9.

Just like witness 8430145 and the informant, Ismael Pitti talked about the eventual dismantling of the espionage equipment. *Id.* at ¶44. He stated that, after the presidential elections in May of 2014, Ronny Rodriguez and William Pitti loaded the "computers" and "server" into a car and took them to an unknown location. *Id.* at ¶46. He also stated that on a separate occasion another National Security Council employee loaded the "[r]ack" into a pickup truck and took the rack to an unknown location.[5] *Id.* at ¶47.

---

[4] It may be that the informant is, in fact, Ismael Pitti. Both provide similar testimony about the alleged wiretapping scheme. For purposes of this motion, however, President Martinelli assumes that the informant and Mr. Ismael Pitti are two different individuals.

[5] In this motion, President Martinelli will not outline the lack of probable cause to believe that any MLM equipment whatsoever was lost or misappropriated. Suffice it to say that the Diaz affidavit does not provide any such evidence, and the supporting materials present a very different picture.

Like witness 8430145 and the informant, Pitti makes no mention of either MLM, MLM equipment, or MLM representatives. Indeed, the Pitti affidavit only refers to equipment capable of infiltrating or tapping cell phones (i.e., the NSO Group equipment) and not equipment capable of infiltrating computers (i.e., the MLM equipment). *See, e.g., id*. at ¶13 ("This espionage system in which we were trained had the ability to extract information flowing through a cellular phone."); ¶16 ("The system had to be installed on the target's telephone in order to activate its functions."). And, when Pitti repeats the alleged hearsay evidence implicating President Martinelli in the purported scheme, he also speaks about equipment that would intercept wireless devices, not computers. *Id.* at ¶20 ("[T]he instructions for operating the system were given by Ricardo Martinelli himself through Ronny Rodriguez, who invariably said that 'el Jefe' wanted us to tap a certain person's telephone.") (emphasis added)).

F.  **Prosecuting Magistrate Diaz Falsely Ties the *MLM Equipment* to President Martinelli**

On September 21, 2016, Prosecuting Magistrate Diaz, under oath, submitted an affidavit in support of Panama's extradition request. Aff. of Harry Diaz, RAMB000045-66 (Sept. 21, 2016) ("Attachment H"). In this affidavit, Diaz expressly misrepresented (1) that the MLM equipment was the Pegasus equipment (it was not) and (2) that the MLM equipment could intercept wireless devices (it cannot). *Id.* at RAMB000049. After noting that President Martinelli had approved the $13,475,000 publicly-funded contract with MLM, Diaz stated:

> The [$13,470,000] contract included a Surveillance System PSS (PC Surveillance System) ***called Pegasus*** and a program which ***allowed the interception of wireless devices*** as well as the training of people for these programs. The wireless device equipment was able to capture instant messaging and e-mails, in addition to recording conversations taking place within the radius of location of the device, as well as to access the contact lists of cell phones, information from memory cards and GPS location. For some wireless devices, the equipment allowed access and the recording of telephone calls.

*Id.* (emphasis added).

Diaz also discussed, under oath, the "dismantling" of the surveillance equipment after the presidential elections. Again, even though multiple witnesses had stated that National Security Council members had dismantled and removed surveillance equipment provided by the NSO Group, and *not* MLM, Diaz once again misrepresented that this equipment had been purchased from MLM with public funds. Diaz stated:

> Upon termination of the presidential term of Mr. RICARDO MARTINELLI BERROCAL, the equipment disappeared from the facilities of the National Security Council . . . . This situation causes a detriment to the patrimony of the Panamanian State that acquired said equipment through the Social Investment Fund, to meet "social interest needs" by "improving the quality of life of underprivileged people."

*Id.* at RAMB000050.

**G.  The Extradition Complaint**

Like the Diaz affidavit, the Complaint filed by the United States government misrepresents that: (1) the Pegasus equipment was purchased with public funds; (2) MLM personnel trained National Security Council members on this equipment; and (3) Panama's General Comptrollership had concluded that the discarding of the Pegasus equipment had caused a loss to Panama. Specifically, the Complaint states:

- "The [Pegasus] system was purchased using public funds that had been allocated to the Social Investment Fund. Specifically, US $ 13,475,000 of the funds were used to purchase Pegasus and its associated equipment from MLM Protection Ltd. ('MLM'), a private Israeli company." Compl. [D.E. 1], at 4.

- "MLM employees provided training on Pegasus to the Special Services unit, and returned periodically to service and update the system." *Id.*

- "An audit conducted by the General Comptrollership concluded that the loss to the state sustained as a result of the purchase and disappearance of the [Pegasus] surveillance equipment amounted to US $10,861,857.48." *Id.* at 7.

Not a single one of those statements is true.

## II. Discussion

At an extradition hearing, a court must determine whether there is probable cause to believe that the defendant is guilty of the charged crimes. *Martin v. Warden, Atlanta Pen,* 993 F.2d 824, 828 (11th Cir. 1993). Because an extradition hearing is focused on probable cause, if a defendant is able to show "a substantial likelihood" that "there is no probable cause" that he committed the extraditable offenses, "that may constitute special circumstances justifying bail pending the extradition hearing." *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 737 (W.D. La. 1999); *In re Extradition of Bowey*, 147 F. Supp. 2d 1365, 1368 (N.D. Ga. 2001) (granting release pending extradition hearing because "the Court believes that the criminal case against Mr. Bowey in France may have little prosecutorial merit").

Here, President Martinelli will prove at the extradition hearing that there is no probable cause that he committed *any* of the charged crimes. In doing so, President Martinelli will demonstrate to the Court what is already clear from the documents produced by Panama, specifically, that Prosecuting Magistrate Diaz misrepresented the facts in his sworn affidavit in support of extradition, misstatements that have been repeated in the government's Complaint.

Under Panama law, to prove the crime of embezzlement, Panama must establish, among other things, that the embezzled[6] "monies" or "assets" qualify as "property of the State." Statement of Roberto J. Moreno at 2 ("Attachment I").

Here, Prosecuting Magistrate Diaz swore, under oath, that the National Security Council used publicly-purchased MLM surveillance equipment to intercept wireless devices in Panama and that this equipment then disappeared. This statement is unquestionably false. And, it takes only a cursory review of the approximately 3,000 pages of supporting documents to ferret that out. First, the apparent witnesses here have claimed that the National Security Council used surveillance equipment provided by the NSO Group, *not* MLM, to carry out the alleged wiretapping operations and that it was this NSO equipment that was removed from the National Security Council building. Second, Panama has provided no evidence showing that public funds were used to buy the NSO equipment. And third, Panama's very own General Comptrollership Report on the purchase and loss of the MLM equipment does not mention President Martinelli or "Pegasus."

Diaz's misrepresentations and omissions were not an innocent mistake. Not a single witness has uttered the word "MLM" when discussing the surveillance equipment supposedly used to intercept wireless devices. To the contrary, all three of the witnesses invoked the names of Martin Berenstein and Sharon Oknin, men who worked for the NSO Group, as having installed and trained the National Security Council on the "espionage equipment" supposedly used in the alleged wiretapping scheme. And, according to the very contracts contained within the supporting materials, it is the NSO Group, *not* MLM, that supplied the "Pegasus System," a system allegedly

---

[6] Under Panama law, one can embezzle money or an asset by taking it, misappropriating it, or misusing it. See *Código Penal* (Penal Code), arts. 338, 341 (2008).

capable of "collecting and gathering information from mobile devices[.]"  Attach. D at RAMB000621.

To be sure, according to the supporting documents, the MLM equipment did, in fact, include surveillance equipment, namely the "PSS Pc Surveillance System" (apparently capable of covertly infiltrating "suspects' computers") and "Circles Technology" (apparently capable of tracking a person's cell phone).  But the supposed firsthand witnesses to the illicit wiretapping activities have *never* claimed that the National Security Council used this MLM equipment to conduct the alleged surveillance at issue here.  Rather, they have mentioned the equipment provided by the NSO Group (i.e., "Pegasus").  And, more importantly, Panama's own General Comptrollership conducted an audit of both the purchase and apparent loss of the MLM equipment.  The audit identified nine separate government officials as bearing some form of responsibility, none of which include President Martinelli or the National Security Council members allegedly involved in the illegal wiretapping scheme and purported removal of the equipment from the National Security Council building (i.e., Ronny Rodriguez, William Pitti, or Ismael Pitti).  Nor has Panama even *charged* these men with embezzlement crimes stemming from the acquisition, use, or loss of the MLM equipment.

In closing, Panama has presented this Court with an extradition Complaint that contains obviously false statements.  These false statements appear to have been originated by Prosecuting Magistrate Diaz, a man who, when asked whether decisions were still "sold" in Panama, said that when "[t]he complaints arrive, I have to say file a charge, I can't do anything."  Given the current

state of this case, President Martinelli respectfully submits that a bond is appropriate and would allow President Martinelli to best prepare for the long extradition fight ahead.

Dated:  July 4, 2017　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　*s/ Marcos Daniel Jiménez*
　　　　　　　　　　　　　　　　　　　　　Marcos Daniel Jiménez
　　　　　　　　　　　　　　　　　　　　　Florida Bar No. 441503
　　　　　　　　　　　　　　　　　　　　　**Marcos D. Jiménez, P.A.**
　　　　　　　　　　　　　　　　　　　　　255 Alhambra Circle, Suite 800
　　　　　　　　　　　　　　　　　　　　　Coral Gables, Florida 33134
　　　　　　　　　　　　　　　　　　　　　Telephone:    305.772.6026
　　　　　　　　　　　　　　　　　　　　　Email:  mdj@mdjlegal.com

　　　　　　　　　　　　　　　　　　　　　John R. Byrne
　　　　　　　　　　　　　　　　　　　　　Florida Bar No. 0126294
　　　　　　　　　　　　　　　　　　　　　Jordi C. Martínez-Cid
　　　　　　　　　　　　　　　　　　　　　Florida Bar No. 100566
　　　　　　　　　　　　　　　　　　　　　**LEÓN COSGROVE LLC**
　　　　　　　　　　　　　　　　　　　　　255 Alhambra Circle, Suite 800
　　　　　　　　　　　　　　　　　　　　　Coral Gables, Florida 33134
　　　　　　　　　　　　　　　　　　　　　Telephone:    305.570.3233
　　　　　　　　　　　　　　　　　　　　　Facsimile:    305.437.8158
　　　　　　　　　　　　　　　　　　　　　Email:  jbyrne@leoncosgrove.com
　　　　　　　　　　　　　　　　　　　　　Email:  jmartinez-cid@leoncosgrove.com
　　　　　　　　　　　　　　　　　　　　　Email:  lburns@leoncosgrove.com

　　　　　　　　　　　　　　　　　　　　　*Counsel for Ricardo Alberto Martinelli Berrocal*

## CERTIFICATE OF SERVICE

This motion was filed electronically on July 4, 2017 through CM/ECF and served on AUSA Adam Fels, through that system.

*s/ Marcos Daniel Jimenez*
Marcos Daniel Jimenez
