# ATTACHMENT H

25

REQUEST FOR EXTRADITION AND
ARREST FOR THE PURPOSE OF
EXTRADITION OF RICARDO
ALBERTO MARTINELLI BERROCAL

CASE NUMBER 138-2015

AFFIDAVIT OF
*EL MAGISTRADO FISCAL*

I, Harry A. Díaz, declare under oath and certify that:

1. I am a Panamanian Citizen bearer of personal Identity Card N° eight-two
hundred and thirty six-even hundred eighty nine (8-236-789), male,
married, with domicile in the City of Panama, Republic of Panama.

2. I am a Justice of The Criminal Chamber of the Supreme Court of Justice
of the Republic of Panama since June 16, 2011.

3. I have been commissioned by the Plenum of the Supreme Court as *El
Magistrado Fiscal* within the cause identified under the case number
138-2015, pursued against the Deputy of the Central American Parliament
(PARLACEN) and former President of the Republic of Panama, RICARDO
ALBERTO MARTINELLI BERROCAL, who is being investigated for the
commission of Crimes AGAINST THE INVIOLABILITY OF SECRET AND
THE RIGHT TO PRIVACY, as well as for crimes AGAINST THE PUBLIC
ADMINISTRATION.

4. As El Magistrado Fiscal I have carried out the investigation against the
Deputy RICARDO ALBERTO MARTINELLI BERROCAL and I have
brought forth accusation against him, therefore, I am familiar with the facts
of the same, as well as with the charges and evidence against him.

5. The facts that are set out in the current Affidavit are found narrated based
on my personal knowledge, by information that has been provided to me
by state institutions, by interviews of the witnesses, and other sources of
information. What is rendered constitutes a summary of the facts that I
have dealt with during the investigation and do not fully reflect my
knowledge thereof. The evidence mentioned in this Affidavit does not
represent all of the evidence gathered during the development of the
investigation.

1

RAMB000045

20

## HISTORY OF THE INVESTIGATION.

RICARDO ALBERTO MARTINELLI BERROCAL was elected President of the Republic of Panama during the period from July 2009 to July of 2014. During the said period, as confirmed 5through investigation RICARDO A. MARTINELLI BERROCAL engaged in illicit activities with funds, resources and public officers that allowed him to affect the rights of at least a hundred and fifty (150) people through illegal interceptions in its different modalities of private communications; the surveillance of their telephone conversations, e-mails, conversations by WhatsApp, Blackberry instant messaging; the extraction of data, information, audios, videos from hard discs, cellular phones, electronic devices and similar; as well as remotely activate the microphone and video features so as to capture communications and private behaviors, among other activities.

RICARDO ALBERTO MARTINELLI BERROCAL, in his capacity as Deputy of the Central American Parliament, can only be prosecuted by the highest Court of Panama and by the end of an exhaustive investigation, on October of 2015, in my capacity as Justice of the Supreme Court of Justice and *El Magistrado Fiscal* for the referred cause 138-15 it was determined that we count on sufficient evidence so that RICARDO MARTINELLI BERROCAL, if found guilty, be convicted to a total of 21 years of imprisonment, pursuant to the Panamanian Criminal Code for the commission of four crimes linked to the illegal interception of private communications, as well as embezzlement by misappropriation and use.

On December 11, 2015, at hearing act, El Magistrado de Garantías, Jerónimo Mejía declared Ricardo Martinelli Berrocal *en rebeldía* for failing to appear before the Court although he was duly served for the accusation hearing requested by me in my capacity as *Magistrado Fiscal*. On December 21 of the same year, the Plenum of the Supreme Court of Justice of Panama, resolved to order the provisional detention of RICARDO MARTINELLI BERROCAL, for being notorious to the Supreme Court of Justice that "the behavior assumed by Mr. MARTINELLI BERROCAL to abscond national jurisdiction has become a circumstance against the normal development of the proceeding pursued against him... The measure of provisional detention requested is fully justified by reason of the evident disregarding of the proceeding by the party under investigation...his absence prevents the development and fulfillment of the proceeding."

2

29

## FACTS OF THE INVESTIGATION.

A. RICARDO MARTIENLLI BERROCAL, reflects on at least 150 intervened people, a marked interest in surveillance to know and access private information not intended for the general public.

For the year 2014, upon termination of the term of RICARDO MARTINELLI BERROCAL, evidence was obtained from an electronic e-mail account and from the hard disc of a computer that contained hundreds of e-mails and audio files of messages and conversations derived from the electronic interception and surveillance of people carried out by his direct subordinates. The victims of the interceptions confirmed that the files that were shown to them were e-mails, messages, private conversations and audio not intended for the general public (and the audios). It is important to mention that in order to achieve such activities it was not required as provided by the Constitution and the Law, any judicial authorization.

All of the above is confirmed and filed in the investigation through interviews from: Luis Emilio Moynes, Javier Polanco, Jaime Eduardo Cucalón, Álvaro Alvarado, José Alberto Álvarez, Guido Alejandro Rodríguez, Yadira Pino y Genaro López Bultrón, among many others, who as journalists, businessmen, union activists and magisterial leaders resulted being victims of illegal interception, surveillance and access to its different modalities of communications, data, audio, and private videos as confirmed through the technical inspections conducted on the computers and e-mails of the National Security Council.

B. The procedures valid in Panama to legally access data and information of the people, as well to intercept the different types of conversations, were violated by RICARDO MARTINELLI BERROCAL.

Article 29 of the Political Constitution of the Republic of Panama, provides for the requirements in order to access mail, Documents and other data and private information establishing that for an intervention to take place there must be an authorization from the competent authority. Article 29 also provides for the interception and recording of private communications for which a judicial authorization is required. In Panama, the President of the Republic is not a judicial authority, and therefore, he cannot order the interception nor recording of

3

30

private conversations. Neither is he the competent authority to access mail, documents, data, information, etc., of the people.

The aforementioned article 29 provides the following:

Article. 29: Mail and other private documents are inviolable and cannot be examined nor retained, if not by mandate from the competitive authority and for specific reasons pursuant to the legal formalities. In any case, absolute secrecy shall be kept over matters different to the subject of the inspection or of the retention.

The search of letters and other documents or papers shall always be carried out the presence of the interested party or a family member of the interested party or in lieu thereof, by honorable neighbors of the same location.

All private communications are inviolable and cannot be intercepted or recorded, but as ordered by judicial authority.
The violation of this provision prevents the use of its finding as evidence, without prejudice to the criminal responsibilities as incurred by the authors.

Article 311 of the Criminal Proceeding Code provides the following:

Article 311: By petition of the Prosecutor, the *Juez de Garantías* may, depending on the Nature of the case, decide to authorize or not the recording of the Conversations and interception of cybernetic communications, satellite tracking, electronic surveillance and telephone communications to confirm the punishable fact and the linking of a determined person. The intervention of the communications shall be deemed as an exception.

If the request is authorized, the judge must state a term not exceeding twenty days and may only be extended by petition from the Public Ministry, who must explain the reasons for such request.

Whoever is entrusted to intercept and record the communications or whoever transcribes it shall be required to keep its content in secrecy, unless, if subpoenaed as a witness within the same proceeding, is required to answer about it. [...]

The President of the Republic, does not bear neither Constitutional nor legal powers, to intercept communications, authorize recordings or have people under surveillance nor to access and extract information, data, documents, audio, videos, etc, stored in computers, cellular phones, electronic devices and related.

In my capacity as *El Magistrado Fiscal*, I investigated if at any given moment the presumed interceptions had ever been judicially authorized, to which the

4

RAMB000048

*31*

Second Criminal Chamber of the Supreme Court of Justice, in response to such, declared not having authorized the interception of communications of the cell phone numbers found on e-mails and recovered files. Likewise, the Public Ministry denied having made any petition with respect to the telephone numbers in question. On the other hand, it is obvious the superfluous nature of the interception authorized by RICARDO A. MARTINELLI BERROCAL, given that one of the intercepted communications were related with the existence of crimes. RICARDO MARTINELLI BERRICAL, not only violated the requirements related to obtaining the judicial authorization for the interceptions in question, but he also did not safeguard the contents of the materials he had acquired illicitly.

C. RICARDO MARTINELLI BERROCAL executed his plan for surveillance, interception, and illegal access by using public resources of the National Security Council.

The audit conducted by the Office of the General Comptrollership of the Republic of Panama revealed that on May 19, 2010, the Board of Directors of the Social Investment Fund with the purpose of achieving the commitments acquired by the President of the Republic, office held at the time by Mr. RICARDO ALBERTO MARTINELLI BERROCAL, approved the project entitled "Security Technology and Provision of Equipment and Installation, Training and Maintenance of the same," for the amount of fifteen million dollars (US$15,000.000.00), granting a 50% advance payment and adducing that through the execution of this and other projects social interest need would be met by improving the quality of life of the underprivileged people. In order to put it into effect he authorized the Executive Director of the Social Investment Fund, who subscribed contract No. 42/2010 with the Israeli private company M.L.M. Protection Ltd, for thirteen million hundred and seventy five thousand dollars (US$13,475.000.00).

The contract included a Surveillance System PSS (PC Surveillance System) called Pegasus and a program which allowed the interception of wireless devices as well as the training of people for these programs. The wireless device equipment was able to capture instant messaging and e-mails, in addition to recording conversations taking place within the radius of location of the device, as well as to access contact lists of cell phones, information from memory cards and GPS location. For some wireless devices, the equipment allowed access and the recording of telephone calls.

5

*32*

Mr. RICARDO MARTINELLI BERROCAL, being President of Republic of Panama and President of the Security Council used the PSS ("PC Surveillance System") to intervene and affect the rights of the people whom he would identify as "objectives". The system could obtain information from personal computers, such as e-mails, photographs, audio and video, among others.

Upon termination of the presidential term of Mr. RICARDO MARTINELLI BERROCAL the equipment disappeared from the facilities of the National Security Council, finding only a Seagate hard-disc with deleted information which was later recovered through the assistance of forensic expert, without having recovered the acquired equipment to this date, even though witnesses have indicated having transported a metal rack that contained the server to the corporate offices of the Super 99, a supermarket chain linked to Mr. MARTINELLI BERROCAL. This situation causes a detriment to the patrimony of the Panamanian State that acquired said equipment through the Social Investment Fund, to meet "social interest needs" by "improving the quality of life of the underprivileged people".

There appears within the investigation a certificate issued by the company NSO Technologies Group Ltd, dated July 1, 2015 informing therein the Government of the Republic of Panama the following:

"That on the July 3, 2012 it has been delivered to the company the purchase order No. 2012-30 for the Pegasus System jointly with the end-user Certificate, signed by Gustavo A. Pérez.

As a consequence to the delivery of the signed documents, the Company installed the Pegasus System in the City of Panama after having received the transfer for 8 million U.S. Dollars, the first phase was for 6 million U.S. Dollars and the second phase for an additional 2 million U.S. Dollars.

The training and the installation of the end User for the use of the system have been made by the Company in the City of Panama".

The purpose of end-user of this technological equipment, was to gather and collect information from mobile devices for the exclusive use of the Government of Panama. This equipment also was acquired by the National Security Council, as per the end user certificate and was used for the illegal interception of communications.

6

*33*

For the provision of the wide-band network necessary to execute the operation, WILLIAM PITTY, an employee of the National Security Council, contracted the services of Liberty Technologies Network. This was an independent service from those used by the National Security Council and its operation required special technical repairs, including the installation of an antenna on sites administered by the Panama Canal Authority, for which were obtained the corresponding permits, as well as optical fiber cables for a stable functioning. The optical fiber cable was installed without the knowledge of the Computer Department of the National Security Council, and it was later discovered that ventilation ducts were uses to lay out the cable.

During summer of 2011, the companies that had sold the equipment to the Government travelled to Panama with the purpose of training the personnel of the National Security Council on how to use, the equipment for cell phones, as well as the one for computing. MARTINELLI BERROCAL and his subordinates generated a list of name and electronic mail of "objectives," which was then handed over to the personnel of the National Security Council, who fulfilled orders by using the interception programs to gather information. First they would look for other email addresses of the "objectives," to later send an e-mail with a link to all the known addresses, which would then infect their systems and grant access to information stored in their computers. Once the infiltration was achieved the information obtained would be sent to the superiors, which included being sent to the office of the President.

D. Relationship between RONY RODRÍGUEZ and RICARDO MARTINELLI BERROCAL, instructions and benefits from the activities.

RONY RODRIGUEZ, according to certification appearing in the investigation, was appointed Lieutenant of the National Police, with duties as Intelligence Director in the National Security since September 28, 2009, up to May 2014. During this period RONY RODRIGUEZ was promoted to the rank of Captain on December 1, 2010, later to the rank of Major on July 5, 2012 and to the rank of Deputy Commissioner on June 6, 2013, that is, that within a period of approximately four years, RONY RODRIGUEZ, went from being a Lieutenant to be the second most important rank in the echelon of the National Police of the Republic of Panama, that is, Deputy Commissioner, moreover is passed onto retirement, with the rank of Deputy-Commissioner on May 8, 2014, scarcely a few days after the general elections had taken place in our country.

7

*34*

GUSTAVO PEREZ DE LA OSSA, former Director of the National Police and former Director of the National Security Council, on the date of the events, he declared that RONY RODRIGUEZ (Chief of Intelligence of the National Security) and appointed by the President MARTINELLI BERROCAL, had strict orders to work directly with the Presidential Office of the Republic and each morning he would deliver an envelope to the Presidential Office. He also declared that he had no access onto the site where the reports came from. GUSTAVO PEREZ indicates that when he arrived at the Security Council there already was work a Modus Operandi between RONY RODRIGUEZ and the Presidential Office.

GUSTAVO SERRANO, agent of the National Security Council, states in his interview the following "we had knowledge that RONNY RODRIGUEZ reported himself directly to the President of Republic and that he did jobs ordered directly to him by the President".

ELVIN ORTIZ, agent of the National Security Council, on the date of the facts, he mentions that "RONNY would comment that he directly renders accounts to the President RICARDO MARTINELLI BERROCAL. RONNY expressed that he would meet in private with RICARDO MARTINELLI BERROCAL and that he received instructions directly from the president". That he and his co-worker ELVYS MORENO, had been trained by Israeli personnel to operate an equipment capable of achieving geolocation of cell phones and of accessing into computers belonging to individuals whose information was required, which among other things, allowed to obtain documents and e-mails.

JUBILO GRAEL, agent of the National Security Council, states that RONY RODRIGUEZ, would give instructions on surveillances and tracking on certain "objectives" that directly concerned #1 (President MARTINELLI BERROCAL) and that it was him who each morning drove RONNY RODRIGUEZ with a yellow envelope to the Presidential Office of the Republic. Also, he mentions that he transported a server's rack (structure for connections) from the Headquarters of the National Security Council known as Building 150 to the Headquarters of the Super 99 (Company owned by RICARDO MARTINELLI BERROCAL), located at Monte Oscuro in Panama City. This transport was done during the month of May of 2014, the same time the Pegasus equipment stopped functioning.

8

RAMB000052

35

On interviews rendered by DEMETRIO PAPADIMITRIU BAGATELAS and ROBERTO HENRIQUEZ, both former Ministers of the Presidential Office during the period 2009-2014, indicated that the only one responsible for the security policies of the State and who would meet and give orders before the National Security Council was the former President RICARDO MARTINELLI BERROCAL.

E. RICARDO MARTINELLI BERROCAL is evidently linked to the crimes for which he is being accused.

Mr. RICARDO MARTINELLI BERROCAL prepared the grounds that facilitated him the interceptions, recording of communications, as well as tracking and surveillance of people and the access to their data or to their information. To that end, Law Decree No. 9 of August 20, 2008, was repealed, which reorganized the National Security Council, which was made up by the President, four (4) Ministers of State and the Director of the National Intelligence and Security Service. In its place, along with a Minister of State it was enacted the Executive Decree No. 263 of March 19, 2010, whereby the National Security Council was created which concentrated on the President of the Republic the capacity to chair and convene the Council, as well as the power to appoint and remove the members of the Executive Secretariat and the Deputy Secretary of said Council, making sure of being the person in control of the topics of the Council, to issue the respective orders and that him and the Council he chaired would receive the corresponding reports.

In the government of RICARDO MARTINELLI BERROCAL, the Intelligence Director RONNY RODRIGUEZ, would report directly to the President. It was generally known within of the National Security Council that "Ronny undertook jobs that the President ordered onto him directly. " RODRIGUEZ confined a space within the facilities of the National Security Council to which the rest of the staff members of the cited Council had no access;  it was secured with a magnetic card (key) accessible only to those working closely with RONNY RODRIGUEZ. According to GUSTAVO PEREZ DE LA OSSA, former Secretary of the National Security Council, Mr. RONNY RODRIGUEZ would give the President a sealed envelope every morning.

Therefore, MARTINELLI BERROCAL was aware of private communications, which could not have been obtained in any other way. The Justice Erasmo Pinilla Castillero, then the president of the Electoral Court, testified that RICARDO

9

36

MARTINELLI BERROCAL questioned him about an issue which was a topic of exchange between e-mails that Justice Pinilla had experienced with third parties. Justice Pinilla acknowledged that "President MARTINELLI, was aware of the content of the e – mail exchanges." Similarly, RICARDO MARTINELLI BERROCAL fired his lawyer, ROSENDO ENRIQUE RIVERA, when he found out about the private communications taking place between Rivera and a third party. During the investigation, the Auxiliary Prosecution Office of the Republic of Panama and the Prosecution Office against Organized Crime, discovered an e-mail address identified as bradpty507a gmail.com, which was found on August 14, 2014, and a DELL OptiPlex portable computer with a Seagate hard disc, which was found during the inspection of the facilities on the National Security Council. Additionally, several audio recordings were found during the inspection on the house of the former executive secretary of the National Security Council.

In the e-mail account found there was a collection of private information and communications obtained through the methods previously described. Computer forensic expert analyzed the Seagate hard-disc and, through a special procedure that recover suppressed information, discovered that e-mails, images, text files, audio files, video files and other private documents of several individuals, had been obtained. The affected individuals being entrepreneurs, journalists, leaders of civic associations, professionals, political friends and family members of politicians. A group of victims confirmed to me under oath, that their e-mails, contact lists, images, calls, conversations via instant messaging, and other private documents and communications with third parties, were found in the email account and communications with third parties, were found in the email account and in the Seagate hard disc.

RICARDO MARTINELLI BERROCAL, also got emails illegally from the director of the TVN television station detailing the measures adopted in order to confront the efforts of a competing channel who was hoping to swipe its employees. Back then, the owner of the NEXT TV competing station, was RICARDO MARTINELLI BERROCAL.

RAMB000054

37

F.   Considerations from the Supreme Court of Justice concerning the admission valuation of the investigation pursued against RICARDO MARTINELLI BERROCAL.

On June 8, 2015, the Supreme Court of Justice considered the "there exist sufficient elements of conviction that demonstrate that since the year 2012 and beginnings of 2014, an interception job of e-mails and phones took place from [...] the installations of the National Security Council, by staff members on service of said institution by using a system capable of capturing instant messaging, e-mails configured in mobile devices, background audio, telephonic agenda, information contained in memory cards, and so forth. Without the corresponding authorization from the competent judicial authority; that is, the Criminal Chamber of the Supreme Court of Justice." Additionally, the Supreme Court determined that the evidence proves that the illegal interceptions presumably involved MARTINELLI BERROCAL. The Court found that the evidence was sufficient to comply with the Standard on *prueba idónea* provided in the criminal procedural code of Panama (article 488, paragraph 4).

*Prueba idónea*. Ensures elements of knowledge capable to prove that the crime was committed and that the person mentioned in the complaint is involved in the crime ("the class of evidence capable of showing that it is conceivable that it is conceivable that a crime has been committed and the person mentioned in the complaint is linked to the same"). In accordance to article 488, *prueba idónea* is required to initiate any investigation under the process previously detailed in this document.

After such ruling, as *El Magistrado Fiscal*, I initiated an investigation, which concluded on October 9, 2015, with an accusation against RICARDO MARTINELLI BERROCAL, for the crimes perpetrated under articles 167, 168, 338 and 341 of the Criminal Code.

On December 21, 2015, on the same year, the Plenum of the Supreme Court of Justice of Panama, resolved to order the provisional detention of RICARDO MARTINELLI BERROCAL as it was notorious for the Supreme Court of Justice "that the behavior assumed by Mr. MARTINELLI BERROCAL to abscond national jurisdiction has become a circumstance against the normal development of the proceeding pursued against him... The measure of provisional detention requested is fully justified by reason of the evident disregarding of the proceeding

11

*38*

by the party under investigation...his absence prevents the development and fulfillment of the proceeding."

**G. RICARDO MARTINELLI BERROCAL's violation of the Criminal Code of the Republic of Panama.**

The extradition of RICARDO MARTINELLI BERROCAL, is requested for four crimes described in the Second Book of the Criminal Code of The Republic of Panama that are enumerated in the accusation.

1.     Chapter III (*Crimes against the inviolability of secret and the right to privacy* Title II, article 167: "Whoever, without the authorization of the judicial authority, intercepts telecommunications or uses technical devices for listening, transmission, recording, or reproducing conversations that are not for the public shall be punished from two to four years in prison".

2.     Chapter III (*Crimes against the inviolability of secret and the right to privacy* Title II, article 168: "Whoever, without proper authorization, practices tracking, persecution, or surveillance against a person, for illicit purposes, shall be punished from two to four years in prison. The same punishment is imposed on anyone who sponsors or promotes these facts".

3.     Chapter I, Title X (Different Forms of Embezzlement) article 338: "A public officer who takes or embezzles in any way, or consents that somebody else appropriates, takes or embezzles any form of money, securities or property which administration, collection or custody have been entrusted by virtue of his position; shall be punished from four to ten years in prison. If the amount of the appropriated exceeds the sum of one hundred thousand dollars (US$100,000.00) or the money, securities or appropriate goods were intended for welfare purposes or for development programs or social support, the punishment shall be from eight to fifteen years in prison".

4.     Chapter I, Title X (Different Forms of Embezzlement) article 341: "A public officer who, for purposes other than service, uses in his own or another's benefit, or allows somebody else to use money, securities or property under his charge by reasons of his duties or which are in his custody, shall be punished from one to three years in prison, or its

12

RAMB000056

*39*

equivalent in daily fines or weekend arrest. The same punishment shall be applied to the public officer that uses official works or services for his benefit or allows someone else to do it".

The evidence prove that RICARDO MARTINELLI BERROCAL violated article 167 of the Criminal Code through his participation and responsibility in the interception of private telecommunications and the use of technical devices to listen, transmit, record or reproduce private conversations without judicial authorization. The rest of the individuals involved in this illicit act would directly report or follow instructions from RICARDO MARTINELI BERROCAL, including delivering secret information that was not disclosed to any staff member of the National Security council. RICARDO MARTINELLI was responsible for all the activities of the National Security Council and was aware of the intercepted private conversations that were subject to this intervention.

With regards to article 168, there is sufficient evidence that clearly proves that, without the necessary judicial authorization, surveillance was maintained over a multitude of people for illicit purpose, being such the main difference between the articles 167 and 168. The evidence consist in the same evidences that prove the illegal interception under the Article 167 specifically, that the direct subordinates of RICARDO MARTINELLI BERROCAL got involved in the surveillance of others, through the installation of programs on telephones to read and intercept communications. Moreover, the article 168 includes a provision imposing a punishment to whomever "sponsors or promotes" the illegal surveillance.

The evidence supports the reasonable conclusion that RICARDO MARTINELLI BERROCAL violated article 338. When M.LM. Corporation undertook the training on espionage for the Intelligence Directorate of the National Security Council, there were installed laptops and a server to function as the apparatus of intervention against the rights of the people. On May 14, 2014, the equipment had been removed from Building 150. The server was never located and the computer assigned to RONNY RODRIGUEZ was returned without the hard-disc. The evidences prove that RODRIGUEZ took the metal "rack" in which was placed the server and dropped it of at the corporate offices of super 99, a company linked to RICARDO MARTINELLI BERROCAL.

13



40

There is *prueba idónea* that RICARDO MARTINELLI BERROCAL and other public officers used properties they had under their responsibility for personal benefit and for purposes other than that of the public service. This is proven through the same evidences that link MARTINELLI BERROCAL and his direct subordinate with the illicit interception of communications and surveillance, which took place for personal benefit by using public resources, such as the offices at the National Security Council and the interception equipment bought by the government.

Attached to this Affidavit is Annex 1, which contains copy of the Executive Decree 263 of March 19 of 2010, published in the Official Gazette 26,493-A of March 19 2010, whereby The National Security Council is created, and other provisions are issued.

This Affidavit of El Magistrado Fiscal, Harry A. Díaz, has been sworn before EL Magistrado de Garantías.

(Sgd)  (Illegible)
HARRY A.DIAZ
El Magistrado Fiscal
Supreme Court of Justice

Sworn and signed today September Twenty-first (21ST), two thousand and sixteen (2016), before me, Jerónimo Emilio Mejía Edward, El Magistrado de Garantías.

(Sgd)  (Illegible)
El Magistrado de Garantías
Supreme Court of Justice

(All folios appear signed illegible)

(There appears a seal reading: REPUBLIC OF PANAMA——JUDICIAL BRANCH-
——*Magistrado de Garantías*——Supreme Court of Justice)

================================================

The foregoing is a translation into English of the document written in Spanish.

Panama, September 22, 2016

*Vilma Wong de Vergara*
Vilma Wong de Vergara, Esq.
Personal Identity Card No.6-8-297

VILMA WONG DE VERGARA
Certified Public Interpreter
Resolution No. 145
of May 20, 1992

RAMB000058

14

ANNEX 1

Copy of the Executive Decree 263 of March 19, 2010, published in the Official Gazette 26,498-A of March 19, 2010, "Whereby the National Security Council is created, and other provisions are issued".

============== ============
The foregoing is a translation into English of the document written in Spanish.

Panama, September 22, 2016

Vilma Wong de Vergara, Esq.
Personal Identity Card No.5-8-297

VILMA WONG DE VERGARA
Certified Public Interpreter
Resolution No. 145
of May 20, 1992

15

RAMB000059

42

REPUBLIC OF PANAMA

MINISTRY OF THE PRESIDENTIAL OFFICE

EXECUTIVE DECREE No. 263
(of March 19, 2010)

Whereby the National Security Council is created, and other provisions are
issued.

THE PRESIDENT OF THE REPUBLIC,
By the legal and constitutional powers vested in him, and

WHEREAS:

That pursuant to Article 17 of the Constitution of the Republic of Panama, the
authorities of the Republic are instituted to protect the life, honor and property of
nationals wherever they may be and foreigners under their jurisdiction, and to
ensure the effectiveness of individual and social rights and duties, and comply
with and enforce the Constitution and the Law.

That, in order to achieve the objective of protecting national and international
integrity of the State and its partners, creating a specialized agency that
establishes policies and strategies aimed at achieving this end is required.

That, for the execution and implementation of policies and strategies that seek
State security, independence, sovereignty and territorial integrity, and the
protection of national interests, it is necessary to establish a structure that has
the tools and techniques needed to detect and prevent acts against the State
security in all its forms.

DECREES:

Chapter I
General Provisions

Article 1. The National Security Council, hereinafter referred to as The Council,
is created as a consultant and advisory body to the President of the Republic, on
public security and national defense.

Article 2. The Council is the Executive Branch and governing and highest
consultation body to establish and articulate policies on security and the State
defense and therefore, must recommend, set and evaluate the policy and the
strategies on this matter, as well as those issues entrusted by the President of
the Republic.

Chapter II
The National Security Council

Article 3. The Council is made up by:
1. The President of the Republic, as chairman;
2. The Minister of the Presidential Office.
For the better understanding of the members of The Council on the matters
submitted to its jurisdiction, public officers selected by the President of the
Republic may attend meetings.

1

RAMB000060



Article 4. To establish and articulate the security and defense policy and strategy of the State, The Council shall provide guidance and instructions to the Executive Secretary and other state institutions to prevent, avoid and face the following threats:

1. Activities against the sovereignty, independence and integrity of the Republic, the rule of law, constitutional order, its infrastructure and strategic interests;
2. Acts against the permanent neutrality of the Panama Canal and its proper functioning;
3. Espionage, rebellion and terrorism and its financing;
4. Actions and activities which hinder or impede the work of national intelligence or counterintelligence;
5. Criminal operations or activities, organized crime, human trafficking, both national or transnational, and activities which violate the legal personality of the State or are against humanity, and
6. Acts aimed at consummating illegal trafficking of nuclear, chemical, biological, and conventional materials, and any other product of restricted or prohibited circulation.

Article 5. The functions of The Council:

1. Prepare and submit to the President of the Republic, the Draft of Security and National Defense Strategy;
2. Study the national security situation and public defense strategies;
3. Set annual goals for intelligence, which shall be developed by the Executive Secretariat of The Council;
4. Ensure compliance and assess the development of the objectives of the Executive Secretariat of The Council;
5. Ensure that security plans and national defense are consistent and possess their own management units; that is, that decisions are taken and actions are implemented in coordination among all entities who ensure the security of the nation;
6. Ensure coordination between the Executive Secretariat of The Council and the Panama Canal Authority;
7. Coordinate with other public institutions and public safety bodies of the Republic of Panama, to develop statistics that may inform the database to be used in the development of security plans.
8. Evaluate international cooperation programs of security, information and intelligence;
9. Issue guidelines that the Executive Secretariat of The Council must adopt, where required, to aid, assist and support the administration of justice or public administration;
10. Establish interagency work groups, for the attention of emergency or crisis situations, and
11. Other functions assigned to the President of the Republic.

Article 6. The Council shall be convened by the President of the Republic, and in his absence, the meetings shall be chaired by the Ministry of the Presidential Office.

Article 7. All documents drawn up or discussed in the ordinary and extraordinary meetings of the Council shall have the classification of restricted access information, as provided by Law 6 of 2002.

2

RAMB000061



**Article 8.** Upon authorization from the President of the Republic, consultations with experts and academic and research institutions on matters related to national security and defense shall be made.

Chapter III
Executive Secretariat of the
National Security Council

**Article 9.** The Executive Secretariat of the Council, hereinafter The Secretariat, is created under the Ministry of the Presidential Office. It shall be responsible for implementing the policies and strategies as issued by the Council on security and national defense.

**Article 10.** The Secretariat has the mission of keeping the President of the Republic informed on matters related to the preservation of public order, national independence and territorial integrity of the State, including any activity detrimental to national security and the stability of the State.

**Article 11.** The Secretariat shall be guided by the following principles:

1. Respect for human rights and fundamental guarantees and strict compliance with the Constitution, the Law and International Treaties and Conventions ratified by the Republic of Panama;
2. Reserve, efficiency, specialization and coordination, according to the intelligence and security objectives established by the Council.

**Article 12.** The Secretariat shall be committed to:
1. Strictly comply with the constitutional and legal order, and other rules issued on the subject by this Executive Decree;
2. Act responsibly, with promptness, diligence, efficiency, loyalty and impartiality in the performance of its duties;
3. Verify and update plans and strategies approved by the President of the Republic, and
4. Maintain complete confidentiality of the information or documents obtained in the course of its duties.

**Article 13.** The following is forbidden to the Secretariat and its staff:

1. To violate the fundamental rights and individual guarantees enshrined in the Constitution and laws of the Republic;
2. Direct or indirect participation in any type or kind of partisan political activity;
3. To disseminate any information known by reason of its activities, except by order of a competent authority;
4. Any other activity detrimental to the physical and moral integrity, honor and property of members, and
5. Conducting activities involving political espionage.

**Article 14.** The Secretariat is responsible for the development and fulfilment of the guidelines and instructions issued by the National Security Council.

The guidelines and instructions, and reports where they appear are classified as restricted access information, as provided by Law 6 of 2002.

**Article 15.** To fulfill its mission, the Secretariat has the following functions:

3

RAMB000062

1. Perform intelligence tasks that help to preserve the integrity, stability and permanence of the Republic of Panama, maintaining governance and the rule of law;
2. Research, prepare and gather the necessary information to alert and prevent risks and threats to national security;
3. Analyze the information obtained from the operations performed in order to determine their degree of importance, and notify the Council thereon;
4. Prevent, detect and avoid the activities of foreign services, groups or individuals that endanger, threaten or violate the constitutional order, rights and freedoms of Panamanian citizens, sovereignty, integrity and security of the State and stability of its institutions and against national economic interests and welfare of the population;
5. Seek cooperation, collaboration and exchange of information with intelligence services of other countries or international organizations;
6. To convene the Council at the request of the President of the Republic, and prepare relevant documentation for its sessions;
7. Maintain the security and protection of its own premises, its information and material and human resources, and
8. Request to natural or legal persons when required, other bodies, public or private institutions, all data, statistics and information related to national security; likewise, to provide the support and cooperation necessary, except in cases where judicial authorization is required.

Article 16. Pursuant to the provisions of Law 6 of 2002, information pertaining to national security and managed by the securities instances shall be restricted.

Article 17. For the proper performance of its duties, the Secretariat shall ensure the flow of relevant information between government institutions and may request and shall receive, in due course, from all state institutions and all their officers, the information it considers relevant.
Government entities and its officers are required to provide accurate and complete information so required, either regularly or specifically.

Article 18. Members of the Secretariat, shall have documentation certifying them, if necessary, without exonerating them, to the person or entity to which said certification is produced, of the obligation of taking appropriate measures to ensure the protection of personal data, identity and appearance of the members.

Article 19. The staff of the Secretariat may carry weapons and use them only in the following cases:

1. To ensure their lives and integrity in carrying out their duties;
2. To protect officers of the Service or outside people involved in institutional activities, and
3. To provide security services for its staff and its premises and facilities.

Article 20. The members of The Secretariat shall be appointed and removed at the will of President of the Republic.

There shall not be considered agents of authority, except those who work in the protection and safety of its facilities and personnel added to the components of the security forces.

Article 21. The concessionaires, distributors, authorized agents and resellers of mobile, fixed and trunk radio systems, internet cafes, infoplazas and

4

RAMB000063

46

communication networks providing and/or marketing the service in or from the Republic of Panama, shall establish and maintain a data record that provides identification and address supplied by natural or legal persons who contract their services, in any of its forms, throughout the national territory.

## Chapter IV
## Organization

**Article 22.** The Secretariat will be organized so as to allow the exercise of administrative control over procedures, human resources, budgetary and personnel matters, and to enable a functional and administrative autonomy.

**Article 23.** The Secretariat is headed by an Executive Secretary and a Deputy Secretary, by appointment and removal at the will of the President of the Republic. It shall have the levels that, according to its structure, shall be necessary for the operation thereof. This subject shall be developed in the internal regulations.

**Article 24.** There shall the minimum requirements for the position of Executive Secretary and Deputy Secretary of the Secretariat:

1. A Panamanian national;
2. Be at least 35 years old;
3. Hold a university bachelor's degree or its equivalent;
4. Be in full exercise of their civil and political rights;
5. No prior felony convictions, and
6. Have recognized probity.

**Article 25.** There are functions of the Executive Secretary:

1. Directing the performance, management and coordination of the units or administrative structures of The Secretariat;
2. Perform the actions necessary for the implementation and monitoring of agreements taken by The Council;
3. Propose guidelines and actions on national security to The Council;
4. Prepare reports of activities under orders from The Council;
5. Carry out specialized studies on matters related to national security;
6. Develop proposed organizational structure of The Secretariat;
7. Enter into by proxy contracts and agreements with public or private entities, which are necessary for the fulfillment of its purposes;
8. Coordinate and maintain relations with the bodies of Public Administration and the Panama Canal Authority, relevant to the objectives needed for national security intelligence;
9. Establish multilateral and bilateral relations with foreign counterparts and international missions, necessary for the performance of his functions, prior authorization of the Council;
10. Delegate the functions that are specific, when required;
11. Propose command structures, control, coordination, counseling, supervision, support and operation, necessary for the operation of the Secretariat, and
12. Perform any other function entrusted by the President of the Republic.

In the performance of his duties, the Executive Secretary shall report only to the President of the Republic.

5

RAMB000064



Article 26. The functions of the Deputy Secretary:

1. Assist the Executive Secretary in specific functions and those that are assigned or delegated by him;
2. Replace the Executive Secretary in his temporary absence, and
3. Perform all other duties as assigned, in accordance with internal regulations.

Article 27. The Secretariat shall have a National Crisis Coordination Center, hereinafter CNCC, which mission is to serve The Council in the monitoring and control of crisis situations affecting national security, declared by them or by the Executive Branch, for which it shall fulfill the following functions:

1. Analyze operational information on public safety as it deems necessary to inform the President of the Republic, through the Secretariat;
2. Plan and coordinate actions aimed at the prevention, mitigation and resolution of crisis situations;
3. Advise, in coordination with the Secretariat and both public and private entities, in the development of contingency plans to cope with crises, and coordinate and ensure compliance, and
4. Any other functions entrusted by the Executive Secretary.

Article 28. The CNCC shall be headed by a General Coordinator, who shall ensure that personnel assigned to the Center is qualified and suitable for performing the tasks required by the Center.

Article 29. The requirements for the position of CNCC General Coordinator are:

1. A Panamanian national;
2. Be at least 35 years old;
3. Be in full exercise of his civil and political rights, and
4. Have observed good conduct and no prior felony convictions.

Article 30. The Secretariat and the CNCC shall develop, annually, its draft budget and submit it to the Minister of the Presidential office, so it may be processed accordingly.

Article 31. The Comptroller General of the Republic shall exercise the corresponding fiscal control to The Secretariat, in all actions and negotiations involving matters of a budgetary nature, in accordance with the constitutional and legal provisions, excluding operations and reports of a sensitive nature, to a level of clearance and intelligence that may be warranted by The Council.

Article 32: The Secretariat staff is required to:
1. Be guided by the principles of responsibility, loyalty, reserve, honesty, selflessness, spirit of sacrifice and respect for the Constitution and the Law;
2. Strictly comply with the provisions of this Executive Decree and other regulations;
3. Strictly, loyally, impartially and diligently enforce their obligations and orders issued by their superiors;
4. Be responsible for compliance with the functions assigned to them and to be implemented;
5. Being fully available to serve for as long as necessary, anywhere, both locally and abroad, as required by the functions and duties of the service;

6

6. Scrupulously comply with the safety standards established by the Secretariat;

7. Personally perform the functions of office effectively, responsibly, honestly, promptly, with care and efficiency, in the time and place specified, and

8. Keep strict confidentiality on information or documentation disclosed by reason of the performance of their duties,

Chapter V
Final Provisions

Article 33. As of the entering into force of this Executive Decree, the staff, budget, documentation, goods and resources will be administered by The Secretariat.

Article 34. All references made to the valid regulatory provisions, shall be construed as made to the Executive Secretariat of the National Security Council.

Article 35. The rights acquired by public servants of The Secretariat, job stability and continuity of service for vacation purposes, leaves, promotions, retirement and other benefits derived from seniority are recognized.

Article 36. This Executive Order shall enter into force as of the promulgation thereof.

BE IT COMMUNICATED AND ENFORCED

Given in the City of Panama, on the 19th day of the month of March of two thousand and ten (2010).

(Sgd) (Illegible)
RICARDO MARTINELLI BERROCAL
President of the Republic

(Sgd) (Illegible)
DEMETRIO PAPADIMITRIU
Minister of the Presidential Office

=======================================
The foregoing is a translation into English of the document written in Spanish.

Panama, September 22, 2016

Vilma Wong de Vergara, Esq.
Personal Identity Card No.5-8-297

VILMA WONG DE VERGARA
Certified Public Interpreter
Resolution No. 145
of May 20, 1982

7

RAMB000066