# ADDENDUM

# SUMMARY CHART
# FOR PROBABLE CAUSE

ARTICLE 167

"Whoever, without the authorization of the judicial authority, intercepts telecommunications or uses technical devices for listening, transmission, recording, or reproducing conversations that are not for the public shall be punished from two to four years in prison" (RAMB000031).

EVIDENCE:

- On March 19, 2010, President Martinelli Berrocal issued Executive Decree No. 263, which created a "consultant and advisory body to the President" called the National Security Council ("NSC"). Executive Decree No. 263, Annex 1 to Aff. of Harry Diaz at 42 (RAMB000060). According to the decree, the NSC consisted of two individuals: the President himself and the Minister of the Presidential Office, although the President could select public officers to attend the meetings of the NSC. *Id.* In practice, the NSC was controlled by President Martinelli Berrocal. According to Mr. Demetrio Papadimitriu Bagatelas ("Papadimitriu Bagatelas"), former Minister of the Presidential Office, although the NSC consisted of Martinelli Berrocal and himself, "there has never been a meeting of the Board of Directors . . . everything was with the President." Papadimitriu Bagatelas Interview, Exh. 8 at 2312 (RAMB 002276). Papadimitriu Bagatelas indicated that the Secretariat "reports directly to the President of the Republic." *Id.* at 2314 (RAMB 002278). Former Presidential Minister Mr. Robert Milton Cohen Henríquez Sasso stated that, according to the official organizational chart, both the NSC and the Secretariat "are not integrated neither subordinated to the Ministry of the Presidential Office, on the contrary, they are bodies reporting directly to the Presidential Office of the Republic." Cohen Henríquez Sasso Interview, Exh. 8 at 2321 (RAMB002285).

- Several individuals served at the NSC until Martinelli Berrocal's Presidential term expired in 2014, including three individuals who comprised the NSC's new "Special Services" unit: (1) Ronny Rodriguez ("Rodriguez"), a/k/a "Didier," assigned to e-mail rrodriguez@csn.gob.pa, who served as the Director of Intelligence of the Executive Secretariat from September 29, 2009 to May 2014, Oct. 7, 2015 Letter from NSC Executive Secretariat, Exh. 2 at 501 (RAMB 000510); (2) Ismael Pitti, a/k/a "Brad," assigned to e-mail ipitti@csn.gob.pa, who served as a First Corporal from December 12, 2009 to May 2014, *id.*; and (3) William Pitti, a/k/a "Guillermo," assigned to e-mail wpitti@csn.gob.pa, who served as a Deputy Chief of Intelligence from January 21, 2011 until September 3, 2014, William Pitti Personnel Records, Exh. 2 at 492-94.

- Ismael Pitti learned at the outset from Rodriguez that Martinelli Berrocal had tasked Rodriguez with forming a special group, that the activities of the group would be confidential, and that the group would be led directly by Martinelli Berrocal (a/k/a "El Jefe.") I. Pitti Aff. ¶¶ 3-5. Other witnesses corroborated that Rodriguez reported directly to Martinelli Berrocal while working at the NSC. *See* Interview of Jubilo Antonio Graell, Exh. 7 at 1978-79, 1982 (RAMB001942-43, RAMB001946) (witness indicated that Rodriguez's sole access to number one—President Martinelli—created friction between Rodriguez and the executive secretary and that Rodriguez would go to the Presidential Palace each day to deliver a yellow envelope). The Special Services unit established an office on the top floor of an NSC building called "150" ("Building 150"), which was

accessible only by its three members with an electronic key card.  *See* Interview of Vildia Del Carmen Torres Potes, Exh. 7 at 2076-77 (RAMB002041-2042) (witness indicating that only Rodriguez, William Pitti, and Ismael Pitti remained in Building 150 when the Intelligence Directorate moved out, and that Rodriguez and William Pitti controlled who could enter the offices in that building); Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 (RAMB001773) (witness was instructed to turn in his electronic key card to building 150, leaving only Rodriguez, William Pitti, and Ismael Pitti with access to the area); Ismael Pitti Aff. ¶ 6 (entire top floor of Building 150 was secured so only the three had a key)

- Two separate sets of specialized equipment were purchased for the Special Services unit: one from an Israeli company called MLM Protection Limited ("MLM") and the other from an Israeli company called NSO Group Technologies Limited ("NSO").

- The MLM equipment was purchased first, prior to February 13, 2011, when Director of the National Police Gustavo Perez signed a final acceptance letter regarding a contract between MLM and the Social Investment Fund of the Ministry of the Presidency notifying MLM that the equipment had been installed and training had been provided to "100% satisfaction."  Final Acceptance Letter, Exh. 2 at 404.

- According to MLM's Proposal, submitted to the Presidential Office of Panama and to the Panamanian Police in March 2010, MLM was to provide a PC Surveillance System ("PSS"), which was designed to "silently install (PSS agents) into the target computers, using one of the supplied infection methods," then "acquire the target's required data, using the supplied acquisition modules such as files inquiry, audio captures, keyboard logger and much more."  MLM Proposal, Exh. 4 at 1024-27 (RAMB 000937-40).  Thus, the PSS was able to render all contents on the computer capable of interception. Statement of Elvys Moreno Murillo, Exh. 7 at 1852-53 (RAMB001814-15).

- On July 3, 2012, NSO sold to the NSC ("Consejo de Seguridad Nacional")a system called "Pegasus," which was designed for "collecting and gathering information from mobile devices fot the exclusive use of Panama's government."  End User Certificate signed by Gustavo Perez on behalf of the NSC, Exh. 2 at 614-615 (RAMB000621-22).  NSO did in fact install this Pegasus System after being paid US $8 million.   Letter from NSO to Government of Panama, Exh. 2 at 608, RAMB000615 (stating that NSO "installed the Pegasus System [pursuant to a purchase order signed by the Director of the NSC] in Panama City after receiving money transfer of 8 million American Dollars, the first stage was 6 million American Dollars and the second stage was additional 2 million American Dollars,").  This system had the ability to extract information flowing through a cellular telephone (including calls, call logs, and the calendar), and to give access to emails on the phone, any files saved on the memory card, and all messages sent via WhatsApp or Blackberry Messenger, the camera, and microphone.  I. Pitti Aff. ¶¶ 13-15.

- According to Ismael Pitti, a group of six to eight Israelis installed the equipment and trained him and others on how to use it; the Israelis said that they had already met with President Martinelli Berrocal.  *Id.* ¶ 8; *see also* Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 at 1819 (RAMB001781) (witness received training along with Rodriguez, W. Pitti, I. Pitti,

and Elvys Moreno from an Israeli on a system for tracking the geolocation of cell phones and recording of emails and data).  This equipment consisted of a server and multiple computers, one of which (according to Rodriguez) was given to "El Jefe."  I. Pitti Aff. ¶ 9.

- Both the MLM and NSO systems were used to violate the privacy of Panamanians and non-Panamanians by gathering information without following the legal procedure and for reasons which had nothing to do with national security.  *Id.* ¶ 20*, see also* Statement of Elvys Moreno Murillo, Exh. 7 at 1858-59 (RAMB 001820-21) (witness noting that it did not appear that there were any resolutions for the list of targets to infect during the time he worked on the system).

- Martinelli Berrocal himself chose the targets of surveillance, and Rodriguez communicated these targets to Ismael Pitti and William Pitti.  I. Pitti Aff. ¶ 20 (Rodriguez would instruct I. Pitti and W. Pitti to tap a certain person's phone, and said that "El Jefe" wanted us to do it, and would then receive the results of the tap), *but see* Statement of Elvys Moreno Murillo, Exh. 7 at 1853 (RAMB001815) (witness, who used software to infect computers of targets from 2010 until 2011, received targets from William Pitti).  On occasion, Ismael Pitti personally observed messages sent by Martinelli Berocal to Rodriguez on Blackberry Messenger.  I. Pitti Aff. at ¶ 27.  Ismael Pitti's statement regarding Martinelli Berrocal's control of the activities of the Special Services Unit is supported by the statement of the then-Executive Secretariat of the NSC, who was nominally Rodriguez's and William Pitti's boss, and who stated that he did not go into the workspace at the top floor of Building 150, did not authorize either of them, or know about, the work that they were doing "surpassing the law that stipulates their duties, obligations and responsibilities," and did not authorize any officer of the NSC to conduct extrajudicial surveillance against any citizen of Panama.  Statement of Alejandro Garuz Recuero, Exh. 8 at 2226-27, 2230, 2232 (RAMB 002191-92, 002195, 002197).

- Gustavo Pérez, Executive Secretary of the Security Council from March to September, 2012, stated: "when I get to the National Security Council, there was already a modus operandi of work between Ronny Rodríguez and the Presidential Office." Statement of Gustavo Pérez, Exh. 8 at 2279 (RAMB002244).  He stated that "Ronny did not report directly to me, due to he had strict orders to work with the Presidential Office." *Id.* at 2266 (RAMB002231).  Secretary Pérez stated that when the President "spoke of something, that is, when he went on television talking about that he knew some information of someone of Deputies or any other, you could tell they did not come from my person the Council but from Ronny Rodriguez, he delivered all morning those envelopes in the Presidential Office, and the place where he came from with those envelopes, I was forbidden from entering because he had safe houses outside the premises of the Council.  *Id.* at 2280 (RAMB002245).

- The targets selected by Martinelli Berrocal included members of opposition political parties, individuals with ties to the previous administration, members of the Electoral Tribunal, the Supreme Court of Justice, journalists, trade unionists, businessmen, Martinelli Berrocal's business competitors, activists, U.S. citizens and diplomats, and even Martinelli Berrocal's mistress.  I. Pitti Aff. ¶ 32; *see also* Interview of Elvys Moreno

4

Murillo, Exh. 7 at 1853 (RAMB001815) (William Pitti gave witness list of 20 to 25 people, trade unionists, and members of political parties).  Victims included Zulay Rodríguez, Francisco Sánchez Cardenas, Mitchell Doens, Yassir Purcait, Raúl Sandoval, and others. I. Pitti Aff. ¶¶ 33-34.  One witnesses corroborated that that Mitchell Doens was a victim of interception because he recalled transcribing a phone interception, which had been given to him by "Didier" (Ronny Rodriguez)" on a CD in approximately September 2010, and he recognized one of the voices belonging to Mr. Doens, and he was talking with another male about events occurring in Bocas del Toro.  Statement of Julio Palacio Martinez, Exh. 7 at 1989, 1993 (RAMB0001953, 0001957).  When Mr. Palacio Martinez finished with the transcription, he handed it in an envelope to Rodriguez; a few days later, Mr. Palacio Martinez saw that the transcription had been published in one of the major Panamanian newspapers.  *Id.*

- Not only did Martinelli Berrocal select the targets of the electronic surveillance, but he also received the results of the surveillance every day from Rodriguez.  I. Pitti Aff. ¶ 21.  This report was delivered by Rodriguez to Martinelli Berrocal, along with the "governability analysis report" (which dealt with events "genuinely related to national security") in a manila envelope.  *Id*. at ¶¶ 22, 26; *see also* Interview of Jubilo Antonio Graell, Exh. 7 at 1978, 1979, 1982 (RAMB001942-43, RAMB001946) (Rodriguez would go to the Presidential Palace each day to deliver a yellow envelope); Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 at 1831 (RAMB001793) (Rodriguez was picked up each morning by William Pitti and driven to the Presidential Office with a yellow envelope).  On occasion, "El Jefe"—President Martinelli Berrocal—would request that audio or video be uploaded onto YouTube, which was done by William Pitti.  I. Pitti Aff. ¶ 29.  Two particular occasions recalled by William Pitti involved the publishing of an audio recording of a man named Francisco Sánchez Cardenas having sexual relations, and an audio recording of an argument between Zulay Rodriguez and her husband regarding Rodriguez's alleged infidelity.  *Id*. ¶ 43.  The recordings were played for both victims, and each recalled the private conversations which had been intercepted.  Statement of Zulay Rodriguez, Exh. 8 at 2383 (RAMB002348); Statement of Francisco Sánchez Cardenas, Exh. 9 at 2559 (RAMB002527).  Ismael Pitti recalled that Martinelli Berrocal, on at least one occasion, appeared on a TV program to boast to a journalist named Alvaro Alvarado (whom he had had intercepted) that he had "the dossier and pedigree on everyone, everything in this country," and that he knew "what each person has done and not done."  I. Pitti Aff. ¶¶ 36, 41.

- Ismael Pitti stated that he would occasionally send emails to communicate requested information to Rodriguez on an email account specially set up for the Special Services unit: brad.pty507@gmail.com.  *Id*. ¶ 28.  Investigators located this e-mail address and, on August 14, 2014, used forensic analysis to recover 573 e-mails in the e-mail's inbox. Statement of Luis Enrique Rivera Calles, Exh. 9 at 2703-04 (RAMB002670-72).  Forensic examiners examined the messenger program associated with the email brad.pty507@gmail.com and found the following e-mail addresses there: guerranavarro@gmail.com, csalinas@csn.gob.pa, gdiaz@wipet.com, jpalacios@csn.gob.pa, jpalacio@csn.gob.pa, martinb@nsogroup.com, rrodriguez@csn.gob.pa, rsalinas@csn.gob.pa, and sharono@nsogroup.com.  *Id.* at 2706

(RAMB002673).  When asked by investigators how the forensic examiner would describe the documents that were obtained from the eye witness inspection procedure conducted on the email brad.pty507@gmail.com, the examiner responded: "The downloaded emails made reference to ways to infect through messages some targets, resulting in telephone numbers through a platform designed to capture and present reports of telephone conversations of different people, either by Whatsapp messenger, texts, calls and emails, using a specialized software that could capture and intercept contacts, text messages, emails, call records, calendars, of any cellphone model that the platform used to that effect, could manage, among these, private conversation applications such as blackberry messenger." *Id.* at 2706-07 (RAMB002673-74).  The forensic examiner noted that among the content he found in the e-mails: make reference to party agendas of political campaigns, conversations in meetings where specific political party were mentioned, proposals, personal business of political election candidates, personal business of candidates family, political campaign strategies, WhatsApp conversation, material about primary elections, electoral rolls, tracking to known political candidates, documents of public institutions or final minutes of congress or internal meetings of some political party, also different models of telephone devices to update current platforms of capturing of information or telephone messengers, audios of meetings of political campaigns, emails that mentioned name of possible public figures associated with phone numbers that presumably, they owned at that time, agendas of political candidates campaign, confidential documents (and other items). *Id.* at 2707 (RAMB002674).

- During the course of the investigation, multiple victims were interviewed to determine whether they could recognize their e-mails or recordings taken from the brad.pty507@gmail.com address.  Dozens of victims identified the discovered communications as their own.  For example, Witness Luis Emilio Mouynes Kieswetter, a General Manager of National Television network ("TVN"), was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and recognized it as an e-mail he had written to other members of TVN's management, commenting on the departure of one of the TVN News anchors for NEXTV, a network owned by Martinelli Berrocal.  Exh. 9 at 2618-20 (RAMB002585-87).  In this e-mail, the witness was telling the TVN executives the reasons why he thought the anchor and others were leaving and what they were going to do to control the exit of the entire staff.  *Id.*  Witness Juan Carlos Navarro Quelquejeu, a member of the Panamanian Democratic Revolutionary Party, was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and the witness recognized it as an e-mail sent to him by a Carolyn Montenegro.  Exh. 9 at 2524-26 (RAMB002492-94).  He recognized the telephone number 6679-0808 as one of the public cell phones he used in a political campaign.  *Id.* at 2526 (RAMB002494).  Witness Raúl Alberto Sandoval Chiari, a member of the Panameñista Party, was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and recognized it as an email sent to him by a Ms. Marien Calviño, to him and other people who worked in the presidential political campaign of Juan Carlos Varela.  Exh. 9 at 2574 (RAMB002542).  Witness Rosendo Enrique Rivera Botello, an attorney who at one point represented Martinelli Berrocal in proceedings pursued against a Mrs. Balbina Herrera, was shown a Whatsapp conversation from his telephone number,

6534-7792, and recognized it as a private communication he had had on February 25, 2013 regarding an intervention in the case. Exh. 8, at 2476 (RAMB002442). After this conversation, Martinelli Berrocal had revoked Mr. Rivera Botello's power of attorney, based, according to the witness, on the interception of this private communication. *Id.* at 2469-70 (RAMB002435-36).

- As previously mentioned, two individuals who had their private conversations regarding alleged infidelity or sexual acts leaked on YouTube recognized their voices on the recordings. Statement of Zulay Rodriguez, Exh. 8 at 2383 (RAMB002348); Statement of Francisco Sánchez Cardenas, Exh. 9 at 2559 (RAMB002527). Ms. Rodriguez, a member of the Panama Democratic Revolutionary Party, provided a statement to authorities regarding the fact that her private conversations were intercepted. Statement of Zulay Rodriguez, Exh. 8 at 2377 (RAMB002342). When shown by investigators e-mails found on the brad.pty e-mail account, she recognized as hers emails dated May 23, 2012, and May 9, 2012, and a Chat via Blackberry PIN dated April 24, 2012, regarding legal actions that she wanted to take against the Martinelli Government over its plan to take over the National Sewage and Water Institute. *Id.* at 2381-83 (RAMB002346-48).

- Mitchell Constantino Doens Ambrosio, a member of the Panama Democratic Revolutionary Party, provided a statement to authorities regarding the fact that his private conversations were intercepted, chiefly because recordings of his conversations with friends and political leaders of the country were made public, and because a written communication that he had had with a man named David Murcia Guzman was produced by the former Panamanian Minister of Work Alma Cortez. Exh. 8 at 2429 (RAMB002394). Mr. Doens Ambrosia recognized as his own, among several intercepted communications in the prosecutor's possession, the conversations he held via BBPIN, namely, June 19, 2012 (*id.* at 2434) (RAMB002399); June 13, 2012 (*id.* at 2435) (RAMB002400); June 4, 2012 (*id.* at 2436) (RAMB02401). He also recognized as his own emails dated June 12, 2012, and June 6, 2012 (*id.* at 2435) (RAMB002400). Mr. Doens also recognized some intercepted recordings he had had with a number of individuals, including some pertaining to the Ngabe Bugle Tribe. *Id.* at 2446-47 (RAMB002412-13). Another witness, Mauro Jose Zuniga Arauz ties the Ngabe Bugle Tribe to Bocas del Toro by stating that Martinelli Verrocal ordered the killing of the Ngabe Bugle in Bocas del Toro in 2010. Statement of Mauro Jose Zuniga Arauz, Exh. 8 at 2417 (RAMB002382). This connection is significant, because witness Julio Palacio Martinez testified that he transcribed an intercepted conversation by Mr. Doens Ambrosio discussing the events of Bocas del Toro in 2010. Statement of Julio Palacio Martinez, Exh. 7 at 1989, 1993 (RAMB 0001953, 0001957).

- Some of the victims of surveillance were directed confronted by Martinelli Berrocal himself. For example, witness Erasmo Pinilla Castillero, a justice of the Panamanian Electoral Tribunal, was shown an e-mail taken from the brad.pty e-mail account dated April 29, 2012, and recognized it as an email exchange that he had had with the Democratic Revolutionary Party Leaders Mitchell Doens and

Hugo Guiraud, who were requesting the intervention of the Tribunal so that the National Sports Institute would allow the use of a gymnasium to hold a political event. Exh. 9 at 2577-78 (RAMB002545-46). Later, Martinelli Berrocal complained to Justice Pinilla Castillero about that email exchange, and the witness replied to him that what the Democratic Revolutionary Party had requested is the usual support that the Electoral Tribunal gave to all political parties. *Id.* at 2579 (RAMB002547). At that point, the witness realized that the contents of the email exchange had been brought to Martinelli Berrocal's attention. *Id.*

- Yassir Purcait, a member of the Panama Democratic Revolutionary Party, testified that on an unspecified date in 2010 or 2011, the witness was summoned to the President's Office to have a conversation with Martinelli Berrocal. Martinelli Berrocal played for him a series of recordings relating to an attempt on the witness's life that Martinelli Berrocal had saved on his computer. Exh. 9 at 2513-16, 2518-19 (RAMB002481-84, 2486-87). Martinelli Berrocal told Purcait that he was not intercepting Purcait, but Purcait understood this as an acknowledgement that Martinelli Berrocal could make recordings of the witness if he wanted to. *Id.* Indeed, Purcait's fears ultimately came to be realized. During the course of the investigation, Purcait was shown an email by prosecutors and recognized as his own a number of different private communications, including a June 13, 2012, e-mail containing a conversation through an instant messaging system between him and a Juan David Morgan regarding discussion of a law in the National Assembly concerning the maritime sector, and an April 23, 2012, e-mail containing a conversation through an instant messaging system between him and a friend named Carlos Young. *Id.* at 2519-20 (RAMB002487-88).

- Upon learning of the existence of interceptions of their private conversations, the victims responded with a range of emotions, including shock, anger, sadness, and frustration. One of the most revealing reactions came from Ms. Zulay Rodriguez, whose private conversations with her husband regarding her alleged infidelity were published on YouTube:

I feel raped, like a victim of rape, I am not surprised anymore, because this people made fun of me, when I listened to them talking even when I was talking over the telephone, I am altered, annoyed, upset, I feel helpless, this is depressing to me, how these mobs and criminals, got into my private personal life, they intercepted BBPIN's, chats, Whatsapp's, emails, they took me photographs pursuing me, those photographs, it can be seen that they took them; because no one around me took them, and that these security departments; instead of using the technology to chase criminals, they mess up with us as opponents, our private lives, chasing us 24 hours a day, they watched my conversations with other political leaders, with lawyers, colleagues, with my father, with my cousin Renee, they saw our family issues, the cases I was handling with other lawyers, information that I had with journalists of the media, with union leaders, they were chasing with the activists and party leaders I held meetings with, they got into my personal banking accounts where my checks are, and above all that, they used information of my email, to upload news into their

8

TV channels Panama America and NEXTV.  Statement of Zulay Rodriguez, Exh. 8 at 2390 (RAMB002355).

- Article 29 of the Panamanian Constitution provides that judicial authorization is required for interception and recording of private communications.  Affidavit of Harry A. Diaz at 29 (RAMB000047); *see also* Article 29 of the Panamanian Constitution, *quoted in* Harry A. Diaz Aff. at 30 (RAMB000048) ("All private communications are inviolable and cannot be intercepted or recorded, but as ordered by judicial authority.").  The Panamanian President "does not bear neither Constitutional nor legal powers, to intercept communications, authorize recordings, or have people under surveillance nor to access and extract information, data, documents, audio, videos, etc., stored in computers, cellular telephones, electronic devices and related."  Harry A. Diaz Aff. at 30 (RAMB000048).  Instead, Article 311 of the Panamanian Criminal Code provides that the *Juez de Garantias*—a court—may decide to authorize recordings after receiving a petition from a prosecutor.  Article 311 of the Panamanian Criminal Code, *quoted in* Harry A. Diaz Aff. at 30 (RAMB000048).  A number of witnesses working at the NSC understood that electronic surveillance had to be authorized by a court in order to be legal under Panamanian law.  *See, e.g.*, Ismael Pitti Aff. ¶ 24 ("In order to tap telephone lines under Panamanian law, the Public Prosecutor must request authorization from a judge, who must grand approval before tapping a telephone line."); Statement of Julio Palacio Martinez, Exh. 7 at 2002 (RAMB001966) (based on the witness's understanding of wiretapping, the Intelligence Directorate needs judicial authorization to intercept calls and cannot make those decisions internally).

- During the course of the investigation, the investigators sought confirmation from the Panamanian Supreme Court as to whether authorization to intercept at least 40 telephone numbers between January 2012 through May 30, 2014, was ever sought or provided.  Letter from Harry A. Diaz to Supreme Court of Justice, Exh. 2 at 592-93 (RAMB000599-600).  Among the numbers included were cellphone numbers recognized by some victims as belonging to them.  *See* Statement of Juan Carlos Navarro Quelquejeu, Exh. 9 at 2526 (RAMB002494); Statement of Rosendo Enrique Rivera Botello, Exh. 8 at 2476 (RAMB002442).  The Court responded that there was no record of a request for judicial authorization, much less judicial authorization to intercept, any of the 40 telephone numbers.  Letter of Jose E. Ayu, Exh. 2 at 598-99 (RAMB000605-06).  The Public Ministry corroborated that there was no record of any request to wiretap, monitor, register, record calls, instant messages, or e-mails of any of the 40 numbers.  Letter of Marcelino Aguilar Aizprua, Exh. 2 at 602 (RAMB000609).

ARTICLE 168

"Whoever, without proper authorization, practices tracking, persecution, or surveillance against a person, for illicit purposes, shall be punished from two to four years in prison.  The same punishment is imposed on anyone who sponsors or promotes these facts" (RAMB000031).

EVIDENCE:

- On March 19, 2010, President Martinelli Berrocal issued Executive Decree No. 263, which created a "consultant and advisory body to the President" called the National Security Council ("NSC").  Executive Decree No. 263, Annex 1 to Aff. of Harry Diaz at 42 (RAMB000060).  According to the decree, the NSC consisted of two individuals: the President himself and the Minister of the Presidential Office, although the President could select public officers to attend the meetings of the NSC.  *Id.*  In practice, the NSC was controlled by President Martinelli Berrocal.  According to Mr. Demetrio Papadimitriu Bagatelas ("Papadimitriu Bagatelas"), former Minister of the Presidential Office, although the NSC consisted of Martinelli Berrocal and himself, "there has never been a meeting of the Board of Directors . . . everything was with the President."  Papadimitriu Bagatelas Interview, Exh. 8 at 2312 (RAMB 002276).  Papadimitriu Bagatelas indicated that the Secretariat "reports directly to the President of the Republic." *Id.* at 2314 (RAMB 002278).  Former Presidential Minister Mr. Robert Milton Cohen Henríquez Sasso stated that, according to the official organizational chart, both the NSC and the Secretariat "are not integrated neither subordinated to the Ministry of the Presidential Office, on the contrary, they are bodies reporting directly to the Presidential Office of the Republic."  Cohen Henríquez Sasso Interview, Exh. 8 at 2321 (RAMB002285).

- Several individuals served at the NSC until Martinelli Berrocal's Presidential term expired in 2014, including three individuals who comprised the NSC's new "Special Services" unit:   (1) Ronny Rodriguez ("Rodriguez"), a/k/a "Didier," assigned to e-mail rrodriguez@csn.gob.pa, who served as the Director of Intelligence of the Executive Secretariat from September 29, 2009 to May 2014, Oct. 7, 2015 Letter from NSC Executive Secretariat, Exh. 2 at 501 (RAMB 000510); (2) Ismael Pitti, a/k/a "Brad," assigned to e-mail ipitti@csn.gob.pa, who served as a First Corporal from December 12, 2009 to May 2014, *id.*; and (3) William Pitti, a/k/a "Guillermo," assigned to e-mail wpitti@csn.gob.pa, who served as a Deputy Chief of Intelligence from January 21, 2011 until September 3, 2014, William Pitti Personnel Records, Exh. 2 at 492-94.

- Ismael Pitti learned at the outset from Rodriguez that Martinelli Berrocal had tasked Rodriguez with forming a special group, that the activities of the group would be confidential, and that the group would be led directly by Martinelli Berrocal (a/k/a "El Jefe.")  I. Pitti Aff. ¶¶ 3-5.  Other witnesses corroborated that Rodriguez reported directly to Martinelli Berrocal while working at the NSC.  *See* Interview of Jubilo Antonio Graell, Exh. 7 at 1978-79, 1982 (RAMB001942-43, RAMB001946) (witness indicated that Rodriguez's sole access to number one—President Martinelli—created friction between Rodriguez and the executive secretary and that Rodriguez would go to the Presidential Palace each day to deliver a yellow envelope).  The Special Services unit established an office on the top floor of an NSC building called "150" ("Building 150"), which was

accessible only by its three members with an electronic key card.  *See* Interview of Vildia Del Carmen Torres Potes, Exh. 7 at 2076-77 (RAMB002041-2042) (witness indicating that only Rodriguez, William Pitti, and Ismael Pitti remained in Building 150 when the Intelligence Directorate moved out, and that Rodriguez and William Pitti controlled who could enter the offices in that building); Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 (RAMB001773) (witness was instructed to turn in his electronic key card to building 150, leaving only Rodriguez, William Pitti, and Ismael Pitti with access to the area); Ismael Pitti Aff. ¶ 6 (entire top floor of Building 150 was secured so only the three had a key)

- Two separate sets of specialized equipment were purchased for the Special Services unit: one from an Israeli company called MLM Protection Limited ("MLM") and the other from an Israeli company called NSO Group Technologies Limited ("NSO").

- The MLM equipment was purchased first, prior to February 13, 2011, when Director of the National Police Gustavo Perez signed a final acceptance letter regarding a contract between MLM and the Social Investment Fund of the Ministry of the Presidency notifying MLM that the equipment had been installed and training had been provided to "100% satisfaction."  Final Acceptance Letter, Exh. 2 at 404.

- According to MLM's Proposal, submitted to the Presidential Office of Panama and to the Panamanian Police in March 2010, MLM was to provide a PC Surveillance System ("PSS"), which was designed to "silently install (PSS agents) into the target computers, using one of the supplied infection methods," then "acquire the target's required data, using the supplied acquisition modules such as files inquiry, audio captures, keyboard logger and much more."  MLM Proposal, Exh. 4 at 1024-27 (RAMB 000937-40).  Thus, the PSS was able to render all contents on the computer capable of interception. Statement of Elvys Moreno Murillo, Exh. 7 at 1852-53 (RAMB001814-15).

- On July 3, 2012, NSO sold to the NSC ("Consejo de Seguridad Nacional")a system called "Pegasus," which was designed for "collecting and gathering information from mobile devices fot the exclusive use of Panama's government."  End User Certificate signed by Gustavo Perez on behalf of the NSC, Exh. 2 at 614-615 (RAMB000621-22).  NSO did in fact install this Pegasus System after being paid US $8 million.   Letter from NSO to Government of Panama, Exh. 2 at 608, RAMB000615 (stating that NSO "installed the Pegasus System [pursuant to a purchase order signed by the Director of the NSC] in Panama City after receiving money transfer of 8 million American Dollars, the first stage was 6 million American Dollars and the second stage was additional 2 million American Dollars,").  This system had the ability to extract information flowing through a cellular telephone (including calls, call logs, and the calendar), and to give access to emails on the phone, any files saved on the memory card, and all messages sent via WhatsApp or Blackberry Messenger, the camera, and microphone.  I. Pitti Aff. ¶¶ 13-15.

- According to Ismael Pitti, a group of six to eight Israelis installed the equipment and trained him and others on how to use it; the Israelis said that they had already met with President Martinelli Berrocal.  *Id*. ¶ 8; *see also* Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 at 1819 (RAMB001781) (witness received training along with Rodriguez, W. Pitti, I. Pitti,

and Elvys Moreno from an Israeli on a system for tracking the geolocation of cell phones and recording of emails and data).  This equipment consisted of a server and multiple computers, one of which (according to Rodriguez) was given to "El Jefe."  I. Pitti Aff. ¶ 9.

- Both the MLM and NSO systems were used to violate the privacy of Panamanians and non-Panamanians by gathering information without following the legal procedure and for reasons which had nothing to do with national security.  *Id.* ¶ 20*, see also* Statement of Elvys Moreno Murillo, Exh. 7 at 1858-59 (RAMB 001820-21) (witness noting that it did not appear that there were any resolutions for the list of targets to infect during the time he worked on the system).

- Martinelli Berrocal himself chose the targets of surveillance, and Rodriguez communicated these targets to Ismael Pitti and William Pitti.  I. Pitti Aff. ¶ 20 (Rodriguez would instruct I. Pitti and W. Pitti to tap a certain person's phone, and said that "El Jefe" wanted us to do it, and would then receive the results of the tap), *but see* Statement of Elvys Moreno Murillo, Exh. 7 at 1853 (RAMB001815) (witness, who used software to infect computers of targets from 2010 until 2011, received targets from William Pitti).  On occasion, Ismael Pitti personally observed messages sent by Martinelli Berocal to Rodriguez on Blackberry Messenger.  I. Pitti Aff. at ¶ 27.  Ismael Pitti's statement regarding Martinelli Berrocal's control of the activities of the Special Services Unit is supported by the statement of the then-Executive Secretariat of the NSC, who was nominally Rodriguez's and William Pitti's boss, and who stated that he did not go into the workspace at the top floor of Building 150, did not authorize either of them, or know about, the work that they were doing "surpassing the law that stipulates their duties, obligations and responsibilities," and did not authorize any officer of the NSC to conduct extrajudicial surveillance against any citizen of Panama.  Statement of Alejandro Garuz Recuero, Exh. 8 at 2226-27, 2230, 2232 (RAMB 002191-92, 002195, 002197).

- Gustavo Pérez, Executive Secretary of the Security Council from March to September, 2012, stated: "when I get to the National Security Council, there was already a modus operandi of work between Ronny Rodríguez and the Presidential Office." Statement of Gustavo Pérez, Exh. 8 at 2279 (RAMB002244).  He stated that "Ronny did not report directly to me, due to he had strict orders to work with the Presidential Office." *Id.* at 2266 (RAMB002231).  Secretary Pérez stated that when the President "spoke of something, that is, when he went on television talking about that he knew some information of someone of Deputies or any other, you could tell they did not come from my person the Council but from Ronny Rodriguez, he delivered all morning those envelopes in the Presidential Office, and the place where he came from with those envelopes, I was forbidden from entering because he had safe houses outside the premises of the Council.  *Id*. at 2280 (RAMB002245).

- The targets selected by Martinelli Berrocal included members of opposition political parties, individuals with ties to the previous administration, members of the Electoral Tribunal, the Supreme Court of Justice, journalists, trade unionists, businessmen, Martinelli Berrocal's business competitors, activists, U.S. citizens and diplomats, and even Martinelli Berrocal's mistress.  I. Pitti Aff. ¶ 32; *see also* Interview of Elvys Moreno

Murillo, Exh. 7 at 1853 (RAMB001815) (William Pitti gave witness list of 20 to 25 people, trade unionists, and members of political parties). Victims included Zulay Rodríguez, Francisco Sánchez Cardenas, Mitchell Doens, Yassir Purcait, Raúl Sandoval, and others. I. Pitti Aff. ¶¶ 33-34. One witnesses corroborated that that Mitchell Doens was a victim of interception because he recalled transcribing a phone interception, which had been given to him by "Didier" (Ronny Rodriguez)" on a CD in approximately September 2010, and he recognized one of the voices belonging to Mr. Doens, and he was talking with another male about events occurring in Bocas del Toro. Statement of Julio Palacio Martinez, Exh. 7 at 1989, 1993 (RAMB0001953, 0001957). When Mr. Palacio Martinez finished with the transcription, he handed it in an envelope to Rodriguez; a few days later, Mr. Palacio Martinez saw that the transcription had been published in one of the major Panamanian newspapers. *Id.*

- Not only did Martinelli Berrocal select the targets of the electronic surveillance, but he also received the results of the surveillance every day from Rodriguez. I. Pitti Aff. ¶ 21. This report was delivered by Rodriguez to Martinelli Berrocal, along with the "governability analysis report" (which dealt with events "genuinely related to national security") in a manila envelope. *Id.* at ¶¶ 22, 26; *see also* Interview of Jubilo Antonio Graell, Exh. 7 at 1978, 1979, 1982 (RAMB001942-43, RAMB001946) (Rodriguez would go to the Presidential Palace each day to deliver a yellow envelope); Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 at 1831 (RAMB001793) (Rodriguez was picked up each morning by William Pitti and driven to the Presidential Office with a yellow envelope). On occasion, "El Jefe"—President Martinelli Berrocal—would request that audio or video be uploaded onto YouTube, which was done by William Pitti. I. Pitti Aff. ¶ 29. Two particular occasions recalled by William Pitti involved the publishing of an audio recording of a man named Francisco Sánchez Cardenas having sexual relations, and an audio recording of an argument between Zulay Rodriguez and her husband regarding Rodriguez's alleged infidelity. *Id.* ¶ 43. The recordings were played for both victims, and each recalled the private conversations which had been intercepted. Statement of Zulay Rodriguez, Exh. 8 at 2383 (RAMB002348); Statement of Francisco Sánchez Cardenas, Exh. 9 at 2559 (RAMB002527). Ismael Pitti recalled that Martinelli Berrocal, on at least one occasion, appeared on a TV program to boast to a journalist named Alvaro Alvarado (whom he had had intercepted) that he had "the dossier and pedigree on everyone, everything in this country," and that he knew "what each person has done and not done." I. Pitti Aff. ¶¶ 36, 41.

- Ismael Pitti stated that he would occasionally send emails to communicate requested information to Rodriguez on an email account specially set up for the Special Services unit: brad.pty507@gmail.com. *Id.* ¶ 28. Investigators located this e-mail address and, on August 14, 2014, used forensic analysis to recover 573 e-mails in the e-mail's inbox. Statement of Luis Enrique Rivera Calles, Exh. 9 at 2703-04 (RAMB002670-72). Forensic examiners examined the messenger program associated with the email brad.pty507@gmail.com and found the following e-mail addresses there: guerranavarro@gmail.com, csalinas@csn.gob.pa, gdiaz@wipet.com, jpalacios@csn.gob.pa, jpalacio@csn.gob.pa, martinb@nsogroup.com, rrodriguez@csn.gob.pa, rsalinas@csn.gob.pa, and sharono@nsogroup.com. *Id.* at 2706

(RAMB002673).   When asked by investigators how the forensic examiner would describe the documents that were obtained from the eye witness inspection procedure conducted on the email brad.pty507@gmail.com, the examiner responded: "The downloaded emails made reference to ways to infect through messages some targets, resulting in telephone numbers through a platform designed to capture and present reports of telephone conversations of different people, either by Whatsapp messenger, texts, calls and emails, using a specialized software that could capture and intercept contacts, text messages, emails, call records, calendars, of any cellphone model that the platform used to that effect, could manage, among these, private conversation applications such as blackberry messenger." *Id.* at 2706-07 (RAMB002673-74).  The forensic examiner noted that among the content he found in the e-mails: make reference to party agendas of political campaigns, conversations in meetings where specific political party were mentioned, proposals, personal business of political election candidates, personal business of candidates family, political campaign strategies, WhatsApp conversation, material about primary elections, electoral rolls, tracking to known political candidates, documents of public institutions or final minutes of congress or internal meetings of some political party, also different models of telephone devices to update current platforms of capturing of information or telephone messengers, audios of meetings of political campaigns, emails that mentioned name of possible public figures associated with phone numbers that presumably, they owned at that time, agendas of political candidates campaign, confidential documents (and other items). *Id.* at 2707 (RAMB002674).

- During the course of the investigation, multiple victims were interviewed to determine whether they could recognize their e-mails or recordings taken from the brad.pty507@gmail.com address.   Dozens of victims identified the discovered communications as their own.   For example, Witness Luis Emilio Mouynes Kieswetter, a General Manager of National Television network ("TVN"), was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and recognized it as an e-mail he had written to other members of TVN's management, commenting on the departure of one of the TVN News anchors for NEXTV, a network owned by Martinelli Berrocal.  Exh. 9 at 2618-20 (RAMB002585-87).  In this e-mail, the witness was telling the TVN executives the reasons why he thought the anchor and others were leaving and what they were going to do to control the exit of the entire staff.  *Id.*  Witness Juan Carlos Navarro Quelquejeu, a member of the Panamanian Democratic Revolutionary Party, was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and the witness recognized it as an e-mail sent to him by a Carolyn Montenegro.  Exh. 9 at 2524-26 (RAMB002492-94).  He recognized the telephone number 6679-0808 as one of the public cell phones he used in a political campaign.  *Id.* at 2526 (RAMB002494).  Witness Raúl Alberto Sandoval Chiari, a member of the Panameñista Party, was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and recognized it as an email sent to him by a Ms. Marien Calviño, to him and other people who worked in the presidential political campaign of Juan Carlos Varela.  Exh. 9 at 2574 (RAMB002542).  Witness Rosendo Enrique Rivera Botello, an attorney who at one point represented Martinelli Berrocal in proceedings pursued against a Mrs. Balbina Herrera, was shown a Whatsapp conversation from his telephone number,

6534-7792, and recognized it as a private communication he had had on February 25, 2013 regarding an intervention in the case.  Exh. 8, at 2476 (RAMB002442). After this conversation, Martinelli Berrocal had revoked Mr. Rivera Botello's power of attorney, based, according to the witness, on the interception of this private communication.  *Id.* at 2469-70 (RAMB002435-36).

- As previously mentioned, two individuals who had their private conversations regarding alleged infidelity or sexual acts leaked on YouTube recognized their voices on the recordings.  Statement of Zulay Rodriguez, Exh. 8 at 2383 (RAMB002348); Statement of Francisco Sánchez Cardenas, Exh. 9 at 2559 (RAMB002527).  Ms. Rodriguez, a member of the Panama Democratic Revolutionary Party, provided a statement to authorities regarding the fact that her private conversations were intercepted.  Statement of Zulay Rodriguez, Exh. 8 at 2377 (RAMB002342).  When shown by investigators e-mails found on the brad.pty e-mail account, she recognized as hers emails dated May 23, 2012, and May 9, 2012, and a Chat via Blackberry PIN dated April 24, 2012, regarding legal actions that she wanted to take against the Martinelli Government over its plan to take over the National Sewage and Water Institute.  *Id.* at 2381-83 (RAMB002346-48).

- Mitchell Constantino Doens Ambrosio, a member of the Panama Democratic Revolutionary Party, provided a statement to authorities regarding the fact that his private conversations were intercepted, chiefly because recordings of his conversations with friends and political leaders of the country were made public, and because a written communication that he had had with a man named David Murcia Guzman was produced by the former Panamanian Minister of Work Alma Cortez. Exh. 8 at 2429 (RAMB002394).  Mr. Doens Ambrosia recognized as his own, among several intercepted communications in the prosecutor's possession, the conversations he held via BBPIN, namely, June 19, 2012 (*id.* at 2434) (RAMB002399); June 13, 2012 (*id.* at 2435) (RAMB002400); June 4, 2012 (*id.* at 2436) (RAMB02401).  He also recognized as his own emails dated June 12, 2012, and June 6, 2012 (*id.* at 2435) (RAMB002400).  Mr. Doens also recognized some intercepted recordings he had had with a number of individuals, including some pertaining to the Ngabe Bugle Tribe.  *Id.* at 2446-47 (RAMB002412-13).  Another witness, Mauro Jose Zuniga Arauz ties the Ngabe Bugle Tribe to Bocas del Toro by stating that Martinelli Verrocal ordered the killing of the Ngabe Bugle in Bocas del Toro in 2010.  Statement of Mauro Jose Zuniga Arauz, Exh. 8 at 2417 (RAMB002382).  This connection is significant, because witness Julio Palacio Martinez testified that he transcribed an intercepted conversation by Mr. Doens Ambrosio discussing the events of Bocas del Toro in 2010.  Statement of Julio Palacio Martinez, Exh. 7 at 1989, 1993 (RAMB 0001953, 0001957).

- Some of the victims of surveillance were directed confronted by Martinelli Berrocal himself.  For example, witness Erasmo Pinilla Castillero, a justice of the Panamanian Electoral Tribunal, was shown an e-mail taken from the brad.pty e-mail account dated April 29, 2012, and recognized it as an email exchange that he had had with the Democratic Revolutionary Party Leaders Mitchell Doens and

Hugo Guiraud, who were requesting the intervention of the Tribunal so that the National Sports Institute would allow the use of a gymnasium to hold a political event. Exh. 9 at 2577-78 (RAMB002545-46). Later, Martinelli Berrocal complained to Justice Pinilla Castillero about that email exchange, and the witness replied to him that what the Democratic Revolutionary Party had requested is the usual support that the Electoral Tribunal gave to all political parties. *Id.* at 2579 (RAMB002547). At that point, the witness realized that the contents of the email exchange had been brought to Martinelli Berrocal's attention. *Id.*

- Yassir Purcait, a member of the Panama Democratic Revolutionary Party, testified that on an unspecified date in 2010 or 2011, the witness was summoned to the President's Office to have a conversation with Martinelli Berrocal. Martinelli Berrocal played for him a series of recordings relating to an attempt on the witness's life that Martinelli Berrocal had saved on his computer. Exh. 9 at 2513-16, 2518-19 (RAMB002481-84, 2486-87). Martinelli Berrocal told Purcait that he was not intercepting Purcait, but Purcait understood this as an acknowledgement that Martinelli Berrocal could make recordings of the witness if he wanted to. *Id.* Indeed, Purcait's fears ultimately came to be realized. During the course of the investigation, Purcait was shown an email by prosecutors and recognized as his own a number of different private communications, including a June 13, 2012, e-mail containing a conversation through an instant messaging system between him and a Juan David Morgan regarding discussion of a law in the National Assembly concerning the maritime sector, and an April 23, 2012, e-mail containing a conversation through an instant messaging system between him and a friend named Carlos Young. *Id.* at 2519-20 (RAMB002487-88).

- Upon learning of the existence of interceptions of their private conversations, the victims responded with a range of emotions, including shock, anger, sadness, and frustration. One of the most revealing reactions came from Ms. Zulay Rodriguez, whose private conversations with her husband regarding her alleged infidelity were published on YouTube:

I feel raped, like a victim of rape, I am not surprised anymore, because this people made fun of me, when I listened to them talking even when I was talking over the telephone, I am altered, annoyed, upset, I feel helpless, this is depressing to me, how these mobs and criminals, got into my private personal life, they intercepted BBPIN's, chats, Whatsapp's, emails, they took me photographs pursuing me, those photographs, it can be seen that they took them; because no one around me took them, and that these security departments; instead of using the technology to chase criminals, they mess up with us as opponents, our private lives, chasing us 24 hours a day, they watched my conversations with other political leaders, with lawyers, colleagues, with my father, with my cousin Renee, they saw our family issues, the cases I was handling with other lawyers, information that I had with journalists of the media, with union leaders, they were chasing with the activists and party leaders I held meetings with, they got into my personal banking accounts where my checks are, and above all that, they used information of my email, to upload news into their

16

TV channels Panama America and NEXTV.  Statement of Zulay Rodriguez, Exh. 8 at 2390 (RAMB002355).

- Article 29 of the Panamanian Constitution provides that judicial authorization is required for interception and recording of private communications.  Affidavit of Harry A. Diaz at 29 (RAMB000047); *see also* Article 29 of the Panamanian Constitution, *quoted in* Harry A. Diaz Aff. at 30 (RAMB000048) ("All private communications are inviolable and cannot be intercepted or recorded, but as ordered by judicial authority.").  The Panamanian President "does not bear neither Constitutional nor legal powers, to intercept communications, authorize recordings, or have people under surveillance nor to access and extract information, data, documents, audio, videos, etc., stored in computers, cellular telephones, electronic devices and related."  Harry A. Diaz Aff. at 30 (RAMB000048).  Instead, Article 311 of the Panamanian Criminal Code provides that the *Juez de Garantias*—a court—may decide to authorize recordings after receiving a petition from a prosecutor.  Article 311 of the Panamanian Criminal Code, *quoted in* Harry A. Diaz Aff. at 30 (RAMB000048).  A number of witnesses working at the NSC understood that electronic surveillance had to be authorized by a court in order to be legal under Panamanian law.  *See, e.g.*, Ismael Pitti Aff. ¶ 24 ("In order to tap telephone lines under Panamanian law, the Public Prosecutor must request authorization from a judge, who must grand approval before tapping a telephone line."); Statement of Julio Palacio Martinez, Exh. 7 at 2002 (RAMB001966) (based on the witness's understanding of wiretapping, the Intelligence Directorate needs judicial authorization to intercept calls and cannot make those decisions internally).

- During the course of the investigation, the investigators sought confirmation from the Panamanian Supreme Court as to whether authorization to intercept at least 40 telephone numbers between January 2012 through May 30, 2014, was ever sought or provided.  Letter from Harry A. Diaz to Supreme Court of Justice, Exh. 2 at 592-93 (RAMB000599-600). Among the numbers included were cellphone numbers recognized by some victims as belonging to them.  *See* Statement of Juan Carlos Navarro Quelquejeu, Exh. 9 at 2526 (RAMB002494); Statement of Rosendo Enrique Rivera Botello, Exh. 8 at 2476 (RAMB002442).  The Court responded that there was no record of a request for judicial authorization, much less judicial authorization to intercept, any of the 40 telephone numbers.  Letter of Jose E. Ayu, Exh. 2 at 598-99 (RAMB000605-06).  The Public Ministry corroborated that there was no record of any request to wiretap, monitor, register, record calls, instant messages, or e-mails of any of the 40 numbers.  Letter of Marcelino Aguilar Aizprua, Exh. 2 at 602 (RAMB000609).

ARTICLE 338

"A public officer who takes or embezzles in any way, or consents that somebody else appropriates, takes or embezzles any form of money, securities or property which administration, collection or custody have been entrusted by virtue of his position, shall be punished . . ." (RAMB 000031).

EVIDENCE:

- On July 1, 2009, Martinelli Berrocal was sworn in as the President of Panama.  Minutes of National Assembly, July 1, 2009, Exhibit 2 to Extradition Complaint (DE 8) 409, 472.

- Less than a year later, on March 19, 2010, President Martinelli Berrocal issued Executive Decree No. 263, which created a "consultant and advisory body to the President" called the National Security Council ("NSC").  Executive Decree No. 263, Annex 1 to Aff. of Harry Diaz at 42 (RAMB000060).  According to the decree, the NSC consisted of two individuals: the President himself and the Minister of the Presidential Office, although the President could select public officers to attend the meetings of the NSC.  *Id.*  In practice, the NSC was controlled by President Martinelli Berrocal.  According to Mr. Demetrio Papadimitriu Bagatelas ("Papadimitriu Bagatelas"), former Minister of the Presidential Office, although the NSC consisted of Martinelli Berrocal and himself, "there has never been a meeting of the Board of Directors . . . everything was with the President."  Papadimitriu Bagatelas Interview, Exh. 8 at 2312 (RAMB 002276).  Papadimitriu Bagatelas indicated that the Secretariat "reports directly to the President of the Republic."  *Id.* at 2314 (RAMB 002278).  Former Presidential Minister Mr. Robert Milton Cohen Henríquez Sasso stated that, according to the official organizational chart, both the NSC and the Secretariat "are not integrated neither subordinated to the Ministry of the Presidential Office, on the contrary, they are bodies reporting directly to the Presidential Office of the Republic."   Cohen Henríquez Sasso Interview, Exh. 8 at 2321 (RAMB002285).

- Several individuals served at the NSC until Martinelli Berrocal's Presidential term expired in 2014, including three individuals who comprised the NSC's new "Special Services" unit:   (1) Ronny Rodriguez ("Rodriguez"), a/k/a "Didier," assigned to e-mail rrodriguez@csn.gob.pa, who served as the Director of Intelligence of the Executive Secretariat from September 29, 2009 to May 2014, Oct. 7, 2015 Letter from NSC Executive Secretariat, Exh. 2 at 501 (RAMB 000510); (2) Ismael Pitti, a/k/a "Brad," assigned to e-mail ipitti@csn.gob.pa, who served as a First Corporal from December 12, 2009 to May 2014, *id.*; and (3) William Pitti, a/k/a "Guillermo," assigned to e-mail wpitti@csn.gob.pa, who served as a Deputy Chief of Intelligence from January 21, 2011 until September 3, 2014, William Pitti Personnel Records, Exh. 2 at 492-94.

- Two separate sets of specialized equipment were purchased for the Special Services unit: one from an Israeli company called MLM Protection Limited ("MLM") and the other from an Israeli company called NSO Group Technologies Limited ("NSO").

- The MLM equipment was purchased first, prior to February 13, 2011, when Director of the National Police Gustavo Perez signed a final acceptance letter regarding a contract between MLM and the Social Investment Fund of the Ministry of the Presidency notifying

MLM that the equipment had been installed and training had been provided to "100% satisfaction."  Final Acceptance Letter, Exh. 2 at 404.  The Government of Panama paid MLM USD $13,475,000 for the system.  Audit Report Summary, Exh. 3 at 684 (RAMB 000692); *see also, e.g.*, Request of Banking Transfer, Exh. 4 at 1272 (RAMB001229) (showing December 10, 2010 transfer of approximately USD $5.4 million as partial payment to MLM from the Ministry of the Presidential Office – Social Investment Fund); Request of Banking Transfer, Exh. 5 at 1277 (RAMB001237) (showing August 10, 2010 transfer of approximately USD $3.3 million).

- On July 3, 2012, NSO sold to the NSC ("Consejo de Seguridad Nacional") a system called "Pegasus," which was designed for "collecting and gathering information from mobile devices fot the exclusive use of Panama's government."  End User Certificate signed by Gustavo Perez on behalf of the NSC, Exh. 2 at 614-615 (RAMB000621-22).  NSO did in fact install this Pegasus System after being paid US $8 million.   Letter from NSO to Government of Panama, Exh. 2 at 608, RAMB000615 (stating that NSO "installed the Pegasus System [pursuant to a purchase order signed by the Director of the NSC] in Panama City after receiving money transfer of 8 million American Dollars, the first stage was 6 million American Dollars and the second stage was additional 2 million American Dollars,").  This equipment consisted of a server and multiple computers, one of which (according to Rodriguez) was given to "El Jefe."  I. Pitti Aff. ¶ 9.

- Gustavo Pérez, Executive Secretary of the Security Council from March to September, 2012, stated: "when I get to the National Security Council, there was already a modus operandi of work between Ronny Rodríguez and the Presidential Office."  Statement of Gustavo Pérez, Exh. 8 at 2279 (RAMB002244).  He stated that "Ronny did not report directly to me, due to he had strict orders to work with the Presidential Office."  *Id.* at 2266 (RAMB002231).  Secretary Pérez stated that when the President "spoke of something, that is, when he went on television talking about that he knew some information of someone of Deputies or any other, you could tell they did not come from my person the Council but from Ronny Rodriguez, he delivered all morning those envelopes in the Presidential Office, and the place where he came from with those envelopes, I was forbidden from entering because he had safe houses outside the premises of the Council.  *Id.* at 2280 (RAMB002245).

- Shortly following the elections which took place on May 4, 2014, when Martinelli Berrocal was about to leave office, members of the NSC removed the surveillance equipment from Building 150 after business hours one evening.  Ismael Pitti stated that after the 2014 election, he received instruction to dismantle the system and remove the computers (Rodriguez took this equipment away to a location unknown to the witness); but they could not remove the printer, as it was paid with the NSC budget, so they poured acid on it to destroy any information that might be saved.  I. Pitti Aff. ¶¶ 44-46.  The server rack was later taken by Jubilo Grael and Rodriguez to a location unknown to the witness.  *Id.* at ¶ 47.

- Jubilo Graell recalled that after May 4 elections, Rodriguez called him and asked him to come over to NSC facilities in Building 150.  Statement of Jubilo Antonio Graell de Gracia, Exh. 2 at 376.  He, Ronny, and co-worker Javier Antonio Quiroz Andreve then drove a

white Toyota Hilux with a server rack from Building 150 first to the Presidential Palace, and then later to a building by Monte Oscuro, where they left the rack. *Id.* at 377. Investigators followed the route described by Graell, and found that the building to which he referred had a "Super 99" sign. *Id.* at 381.

- Super 99 is a company owned by Martinelli Berrocal. Aff. of Harry Diaz at 34 (RAMB000052).

- Quiroz Andreve recalled going with Graell and "Didier" (Rodriguez) in a white Toyota from Building 150 to the Palace of the Herons, then to Monte Oscuro, to the administrative offices of Super 99. Statement of Javier Antonio Quiroz Andreve, Exh. 2 at 391. Once they arrived at the Super 99 offices, "Didier" got out, returned with three more people, but Quiroz Andreve does not know what they did with the rack. *Id.* at Exh. 2 at 392.

- Other witnesses observed that an entire area of Building 150 had been dismantled. *See* Statement of Julio Palacio Martinez. Exh. 7 at 2005 (RAMB 0001970) (when the witness arrived at Building 150, the whole area had been dismantled with a big broken printer, shredded papers, cables pulled out of the computers assigned by the NSC to Ronny, W. Pitti, and I. Pitti, and parts of the furniture were found outside); *see also* Statement of Vildia Del Carmen Torres Potes, Exh. 7 at 2092 (RAMB 002056) (witness, who was tasked with inventorying properties assigned to the Intelligence Directorate, explains that a big printer left behind in building 150 was broken and full of water.).

- The only items that were left behind were a laptop, from which information had been deleted (but was later recovered forensically), and the printer, which had been inventoried and paid for out of the NSC budget. *See* Aug. 14, 2014 Note of Engineer Iris Gonzalez, Exh. 2 at 284 (RAMB000349) (Director of NSC Information Department, when asked about the status of the computers issued to Didier, Guillermo and Brad, noted that Didier's computer was returned without a hard drive; one laptop was reported stolen; and one laptop was not returned); Statement of Iris Gonzalez, Exh. 7 at 1888-89 (RAMB001850-1851) (witness explaining that of the equipment issued by the Computer Directorate to Rodriguez, W. Pitti, and I. Pitti, one computer was reported stolen and another computer was returned without the hard drive (for which no one took responsibility); Minutes of Eyewitness Inspection Procedure, Exh. 2 at 644-45 (RAMB000651-652) (report showing audio and video files were recovered at a forensic science lab from computers (identified in Aug. 14, 2014 Note of Engineer Iris Gonzalez as assigned to Rodriguez, W. Pitti, and I. Pitti)); Minutes of Eyewitness Inspection Procedure, Exh. 1 at 140-42 (RAMB000204-208) (document asserting that contents of the hard drive and other electronic devices were inspected and recorded according to protocol during the eye witness inspection procedure.)

- An audit conducted by the Comptroller General concluded that the loss to Panama sustained as a result of the purchase and disappearance of the MLM surveillance equipment amounted to US $10,861,857.48. May 4, 2015 Audit Report No. 03-003-2015-DIAF, Exh. 3 at 688 (RAMB000696).

ARTICLE 341

"A public officer who, for purposes other than service, uses in his own or another's benefit, or allows somebody else to use money, securities or property under his charge by reasons of his duties or which are in his custody, shall be punished . . . ." (RAMB 000032)

EVIDENCE:

- On July 1, 2009, Martinelli Berrocal was sworn in as the President of Panama. Minutes of National Assembly, July 1, 2009, Exhibit 2 to Extradition Complaint (DE 8) 409, 472.

- Less than a year later, on March 19, 2010, President Martinelli Berrocal issued Executive Decree No. 263, which created a "consultant and advisory body to the President" called the National Security Council ("NSC"). Executive Decree No. 263, Annex 1 to Aff. of Harry Diaz at 42 (RAMB000060). According to the decree, the NSC consisted of two individuals: the President himself and the Minister of the Presidential Office, although the President could select public officers to attend the meetings of the NSC. *Id.* In practice, the NSC was controlled by President Martinelli Berrocal. According to Mr. Demetrio Papadimitriu Bagatelas ("Papadimitriu Bagatelas"), former Minister of the Presidential Office, although the NSC consisted of Martinelli Berrocal and himself, "there has never been a meeting of the Board of Directors . . . everything was with the President." Papadimitriu Bagatelas Interview, Exh. 8 at 2312 (RAMB 002276). Papadimitriu Bagatelas indicated that the Secretariat "reports directly to the President of the Republic." *Id.* at 2314 (RAMB 002278). Former Presidential Minister Mr. Robert Milton Cohen Henríquez Sasso stated that, according to the official organizational chart, both the NSC and the Secretariat "are not integrated neither subordinated to the Ministry of the Presidential Office, on the contrary, they are bodies reporting directly to the Presidential Office of the Republic." Cohen Henríquez Sasso Interview, Exh. 8 at 2321 (RAMB002285).

- Several individuals served at the NSC until Martinelli Berrocal's Presidential term expired in 2014, including three individuals who comprised the NSC's new "Special Services" unit: (1) Ronny Rodriguez ("Rodriguez"), a/k/a "Didier," assigned to e-mail rrodriguez@csn.gob.pa, who served as the Director of Intelligence of the Executive Secretariat from September 29, 2009 to May 2014, Oct. 7, 2015 Letter from NSC Executive Secretariat, Exh. 2 at 501 (RAMB 000510); (2) Ismael Pitti, a/k/a "Brad," assigned to e-mail ipitti@csn.gob.pa, who served as a First Corporal from December 12, 2009 to May 2014, *id.*; and (3) William Pitti, a/k/a "Guillermo," assigned to e-mail wpitti@csn.gob.pa, who served as a Deputy Chief of Intelligence from January 21, 2011 until September 3, 2014, William Pitti Personnel Records, Exh. 2 at 492-94.

- Ismael Pitti learned at the outset from Rodriguez that Martinelli Berrocal had tasked Rodriguez with forming a special group, that the activities of the group would be confidential, and that the group would be led directly by Martinelli Berrocal (a/k/a "El Jefe.") I. Pitti Aff. ¶¶ 3-5. Other witnesses corroborated that Rodriguez reported directly to Martinelli Berrocal while working at the NSC. *See* Interview of Jubilo Antonio Graell, Exh. 7 at 1978-79, 1982 (RAMB001942-43, RAMB001946) (witness indicated that Rodriguez's sole access to number one—President Martinelli—created friction between

Rodriguez and the executive secretary and that Rodriguez would go to the Presidential Palace each day to deliver a yellow envelope). The Special Services unit established an office on the top floor of an NSC building called "150" ("Building 150"), which was accessible only by its three members with an electronic key card. *See* Interview of Vildia Del Carmen Torres Potes, Exh. 7 at 2076-77 (RAMB002041-2042) (witness indicating that only Rodriguez, William Pitti, and Ismael Pitti remained in Building 150 when the Intelligence Directorate moved out, and that Rodriguez and William Pitti controlled who could enter the offices in that building); Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 (RAMB001773) (witness was instructed to turn in his electronic key card to building 150, leaving only Rodriguez, William Pitti, and Ismael Pitti with access to the area); Ismael Pitti Aff. ¶ 6 (entire top floor of Building 150 was secured so only the three had a key)

- Two separate sets of specialized equipment were purchased for the Special Services unit: one from an Israeli company called MLM Protection Limited ("MLM") and the other from an Israeli company called NSO Group Technologies Limited ("NSO").

- The MLM equipment was purchased first, prior to February 13, 2011, when Director of the National Police Gustavo Perez signed a final acceptance letter regarding a contract between MLM and the Social Investment Fund of the Ministry of the Presidency notifying MLM that the equipment had been installed and training had been provided to "100% satisfaction." Final Acceptance Letter, Exh. 2 at 404. The Government of Panama paid MLM USD $13,475,000 for the system. Audit Report Summary, Exh. 3 at 684 (RAMB 000692); *see also, e.g.*, Request of Banking Transfer, Exh. 4 at 1272 (RAMB001229) (showing December 10, 2010 transfer of approximately USD $5.4 million as partial payment to MLM from the Ministry of the Presidential Office – Social Investment Fund); Request of Banking Transfer, Exh. 5 at 1277 (RAMB001237) (showing August 10, 2010 transfer of approximately USD $3.3 million).

- According to MLM's Proposal, submitted to the Presidential Office of Panama and to the Panamanian Police in March 2010, MLM was to provide a PC Surveillance System ("PSS"), which was designed to "silently install (PSS agents) into the target computers, using one of the supplied infection methods," then "acquire the target's required data, using the supplied acquisition modules such as files inquiry, audio captures, keyboard logger and much more." MLM Proposal, Exh. 4 at 1024-27 (RAMB 000937-40). Thus, the PSS was able to render all contents on the computer capable of interception. Statement of Elvys Moreno Murillo, Exh. 7 at 1852-53 (RAMB001814-15).

- On July 3, 2012, NSO sold to the NSC ("Consejo de Seguridad Nacional")a system called "Pegasus," which was designed for "collecting and gathering information from mobile devices fot the exclusive use of Panama's government." End User Certificate signed by Gustavo Perez on behalf of the NSC, Exh. 2 at 614-615 (RAMB000621-22). NSO did in fact install this Pegasus System after being paid US $8 million. Letter from NSO to Government of Panama, Exh. 2 at 608, RAMB000615 (stating that NSO "installed the Pegasus System [pursuant to a purchase order signed by the Director of the NSC] in Panama City after receiving money transfer of 8 million American Dollars, the first stage was 6 million American Dollars and the second stage was additional 2 million American

Dollars,").  This system had the ability to extract information flowing through a cellular telephone (including calls, call logs, and the calendar), and to give access to emails on the phone, any files saved on the memory card, and all messages sent via WhatsApp or Blackberry Messenger, the camera, and microphone.  I. Pitti Aff. ¶¶ 13-15.

- According to Ismael Pitti, a group of six to eight Israelis installed the equipment and trained him and others on how to use it; the Israelis said that they had already met with President Martinelli Berrocal.  *Id.* ¶ 8; *see also* Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 at 1819 (RAMB001781) (witness received training along with Rodriguez, W. Pitti, I. Pitti, and Elvys Moreno from an Israeli on a system for tracking the geolocation of cell phones and recording of emails and data).  This equipment consisted of a server and multiple computers, one of which (according to Rodriguez) was given to "El Jefe."  I. Pitti Aff. ¶ 9.

- Both the MLM and NSO systems were used to violate the privacy of Panamanians and non-Panamanians by gathering information without following the legal procedure and for reasons which had nothing to do with national security.  *Id.* ¶ 20, *see also* Statement of Elvys Moreno Murillo, Exh. 7 at 1858-59 (RAMB 001820-21) (witness noting that it did not appear that there were any resolutions for the list of targets to infect during the time he worked on the system).

- Martinelli Berrocal himself chose the targets of surveillance, and Rodriguez communicated these targets to Ismael Pitti and William Pitti.  I. Pitti Aff. ¶ 20 (Rodriguez would instruct I. Pitti and W. Pitti to tap a certain person's phone, and said that "El Jefe" wanted us to do it, and would then receive the results of the tap), *but see* Statement of Elvys Moreno Murillo, Exh. 7 at 1853 (RAMB001815) (witness, who used software to infect computers of targets from 2010 until 2011, received targets from William Pitti).  On occasion, Ismael Pitti personally observed messages sent by Martinelli Berocal to Rodriguez on Blackberry Messenger.  I. Pitti Aff. at ¶ 27.  Ismael Pitti's statement regarding Martinelli Berrocal's control of the activities of the Special Services Unit is supported by the statement of the then-Executive Secretariat of the NSC, who was nominally Rodriguez's and William Pitti's boss, and who stated that he did not go into the workspace at the top floor of Building 150, did not authorize either of them, or know about, the work that they were doing "surpassing the law that stipulates their duties, obligations and responsibilities," and did not authorize any officer of the NSC to conduct extradjudicial surveillance against any citizen of Panama.  Statement of Alejandro Garuz Recuero, Exh. 8 at 2226-27, 2230, 2232 (RAMB 002191-92, 002195, 002197).

- Gustavo Pérez, Executive Secretary of the Security Council from March to September, 2012, stated: "when I get to the National Security Council, there was already a modus operandi of work between Ronny Rodríguez and the Presidential Office." Statement of Gustavo Pérez, Exh. 8 at 2279 (RAMB002244).  He stated that "Ronny did not report directly to me, due to he had strict orders to work with the Presidential Office."  *Id.* at 2266 (RAMB002231).  Secretary Pérez stated that when the President "spoke of something, that is, when he went on television talking about that he knew some information of someone of Deputies or any other, you could tell they did not come from my person the Council but from Ronny Rodriguez, he delivered all morning those envelopes in the Presidential Office,

and the place where he came from with those envelopes, I was forbidden from entering because he had safe houses outside the premises of the Council.  *Id*. at 2280 (RAMB002245).

- The targets selected by Martinelli Berrocal included members of opposition political parties, individuals with ties to the previous administration, members of the Electoral Tribunal, the Supreme Court of Justice, journalists, trade unionists, businessmen, Martinelli Berrocal's business competitors, activists, U.S. citizens and diplomats, and even Martinelli Berrocal's mistress.  I. Pitti Aff. ¶ 32; *see also* Interview of Elvys Moreno Murillo, Exh. 7 at 1853 (RAMB001815) (William Pitti gave witness list of 20 to 25 people, trade unionists, and members of political parties).  Victims included Zulay Rodríguez, Francisco Sánchez Cardenas, Mitchell Doens, Yassir Purcait, Raúl Sandoval, and others. I. Pitti Aff. ¶¶ 33-34.  One witnesses corroborated that that Mitchell Doens was a victim of interception because he recalled transcribing a phone interception, which had been given to him by "Didier" (Ronny Rodriguez)" on a CD in approximately September 2010, and he recognized one of the voices belonging to Mr. Doens, and he was talking with another male about events occurring in Bocas del Toro.  Statement of Julio Palacio Martinez, Exh. 7 at 1989, 1993 (RAMB0001953, 0001957).  When Mr. Palacio Martinez finished with the transcription, he handed it in an envelope to Rodriguez; a few days later, Mr. Palacio Martinez saw that the transcription had been published in one of the major Panamanian newspapers.  *Id*.

- Not only did Martinelli Berrocal select the targets of the electronic surveillance, but he also received the results of the surveillance every day from Rodriguez.  I. Pitti Aff. ¶ 21.  This report was delivered by Rodriguez to Martinelli Berrocal, along with the "governability analysis report" (which dealt with events "genuinely related to national security") in a manila envelope.  *Id*. at ¶¶ 22, 26; *see also* Interview of Jubilo Antonio Graell, Exh. 7 at 1978, 1979, 1982 (RAMB001942-43, RAMB001946) (Rodriguez would go to the Presidential Palace each day to deliver a yellow envelope); Interview of Elvin Noget Ortiz Gonzalez, Exh. 7 at 1831 (RAMB001793) (Rodriguez was picked up each morning by William Pitti and driven to the Presidential Office with a yellow envelope).  On occasion, "El Jefe"—President Martinelli Berrocal—would request that audio or video be uploaded onto YouTube, which was done by William Pitti.  I. Pitti Aff. ¶ 29.  Two particular occasions recalled by William Pitti involved the publishing of an audio recording of a man named Francisco Sánchez Cardenas having sexual relations, and an audio recording of an argument between Zulay Rodriguez and her husband regarding Rodriguez's alleged infidelity.  *Id*. ¶ 43.  The recordings were played for both victims, and each recalled the private conversations which had been intercepted.  Statement of Zulay Rodriguez, Exh. 8 at 2383 (RAMB002348); Statement of Francisco Sánchez Cardenas, Exh. 9 at 2559 (RAMB002527).  Ismael Pitti recalled that Martinelli Berrocal, on at least one occasion, appeared on a TV program to boast to a journalist named Alvaro Alvarado (whom he had had intercepted) that he had "the dossier and pedigree on everyone, everything in this country," and that he knew "what each person has done and not done."  I. Pitti Aff. ¶¶ 36, 41.

- Ismael Pitti stated that he would occasionally send emails to communicate requested information to Rodriguez on an email account specially set up for the Special Services unit: brad.pty507@gmail.com. *Id.* ¶ 28.  Investigators located this e-mail address and, on August 14, 2014, used forensic analysis to recover 573 e-mails in the e-mail's inbox. Statement of Luis Enrique Rivera Calles, Exh. 9 at 2703-04 (RAMB002670-72).  Forensic examiners examined the messenger program associated with the email brad.pty507@gmail.com and found the following e-mail addresses there: guerranavarro@gmail.com, csalinas@csn.gob.pa, gdiaz@wipet.com, jpalacios@csn.gob.pa, jpalacio@csn.gob.pa, martinb@nsogroup.com, rrodriguez@csn.gob.pa, rsalinas@csn.gob.pa, and sharono@nsogroup.com. *Id.* at 2706 (RAMB002673).  When asked by investigators how the forensic examiner would describe the documents that were obtained from the eye witness inspection procedure conducted on the email brad.pty507@gmail.com, the examiner responded: "The downloaded emails made reference to ways to infect through messages some targets, resulting in telephone numbers through a platform designed to capture and present reports of telephone conversations of different people, either by Whatsapp messenger, texts, calls and emails, using a specialized software that could capture and intercept contacts, text messages, emails, call records, calendars, of any cellphone model that the platform used to that effect, could manage, among these, private conversation applications such as blackberry messenger." *Id.* at 2706-07 (RAMB002673-74).  The forensic examiner noted that among the content he found in the e-mails: make reference to party agendas of political campaigns, conversations in meetings where specific political party were mentioned, proposals, personal business of political election candidates, personal business of candidates family, political campaign strategies, WhatsApp conversation, material about primary elections, electoral rolls, tracking to known political candidates, documents of public institutions or final minutes of congress or internal meetings of some political party, also different models of telephone devices to update current platforms of capturing of information or telephone messengers, audios of meetings of political campaigns, emails that mentioned name of possible public figures associated with phone numbers that presumably, they owned at that time, agendas of political candidates campaign, confidential documents (and other items). *Id.* at 2707 (RAMB002674).

- During the course of the investigation, multiple victims were interviewed to determine whether they could recognize their e-mails or recordings taken from the brad.pty507@gmail.com address.  Dozens of victims identified the discovered communications as their own.  For example, Witness Luis Emilio Mouynes Kieswetter, a General Manager of National Television network ("TVN"), was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and recognized it as an e-mail he had written to other members of TVN's management, commenting on the departure of one of the TVN News anchors for NEXTV, a network owned by Martinelli Berrocal.  Exh. 9 at 2618-20 (RAMB002585-87).  In this e-mail, the witness was telling the TVN executives the reasons why he thought the anchor and others were leaving and what they were going to do to control the exit of the entire staff.  *Id.*  Witness Juan Carlos Navarro Quelquejeu, a member of the Panamanian Democratic Revolutionary Party, was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and the witness recognized it as

an e-mail sent to him by a Carolyn Montenegro. Exh. 9 at 2524-26 (RAMB002492-94). He recognized the telephone number 6679-0808 as one of the public cell phones he used in a political campaign. *Id.* at 2526 (RAMB002494). Witness Raúl Alberto Sandoval Chiari, a member of the Panameñista Party, was shown an e-mail taken from the brad.pty e-mail account dated March 15, 2013, and recognized it as an email sent to him by a Ms. Marien Calviño, to him and other people who worked in the presidential political campaign of Juan Carlos Varela. Exh. 9 at 2574 (RAMB002542). Witness Rosendo Enrique Rivera Botello, an attorney who at one point represented Martinelli Berrocal in proceedings pursued against a Mrs. Balbina Herrera, was shown a Whatsapp conversation from his telephone number, 6534-7792, and recognized it as a private communication he had had on February 25, 2013 regarding an intervention in the case. Exh. 8, at 2476 (RAMB002442). After this conversation, Martinelli Berrocal had revoked Mr. Rivera Botello's power of attorney, based, according to the witness, on the interception of this private communication. *Id.* at 2469-70 (RAMB002435-36).

- As previously mentioned, two individuals who had their private conversations regarding alleged infidelity or sexual acts leaked on YouTube recognized their voices on the recordings. Statement of Zulay Rodriguez, Exh. 8 at 2383 (RAMB002348); Statement of Francisco Sánchez Cardenas, Exh. 9 at 2559 (RAMB002527). Ms. Rodriguez, a member of the Panama Democratic Revolutionary Party, provided a statement to authorities regarding the fact that her private conversations were intercepted. Statement of Zulay Rodriguez, Exh. 8 at 2377 (RAMB002342). When shown by investigators e-mails found on the brad.pty e-mail account, she recognized as hers emails dated May 23, 2012, and May 9, 2012, and a Chat via Blackberry PIN dated April 24, 2012, regarding legal actions that she wanted to take against the Martinelli Government over its plan to take over the National Sewage and Water Institute. *Id.* at 2381-83 (RAMB002346-48).

- Mitchell Constantino Doens Ambrosio, a member of the Panama Democratic Revolutionary Party, provided a statement to authorities regarding the fact that his private conversations were intercepted, chiefly because recordings of his conversations with friends and political leaders of the country were made public, and because a written communication that he had had with a man named David Murcia Guzman was produced by the former Panamanian Minister of Work Alma Cortez. Exh. 8 at 2429 (RAMB002394). Mr. Doens Ambrosia recognized as his own, among several intercepted communications in the prosecutor's possession, the conversations he held via BBPIN, namely, June 19, 2012 (*id.* at 2434) (RAMB002399); June 13, 2012 (*id.* at 2435) (RAMB002400); June 4, 2012 (*id.* at 2436) (RAMB02401). He also recognized as his own emails dated June 12, 2012, and June 6, 2012 (*id.* at 2435) (RAMB002400). Mr. Doens also recognized some intercepted recordings he had had with a number of individuals, including some pertaining to the Ngabe Bugle Tribe. *Id.* at 2446-47 (RAMB002412-13). Another witness, Mauro Jose Zuniga Arauz ties the Ngabe Bugle Tribe to Bocas del Toro by stating that Martinelli Verrocal ordered the killing of the Ngabe Bugle in Bocas del Toro in 2010. Statement of Mauro Jose Zuniga Arauz, Exh. 8 at 2417

(RAMB002382).  This connection is significant, because witness Julio Palacio Martinez testified that he transcribed an intercepted conversation by Mr. Doens Ambrosio discussing the events of Bocas del Toro in 2010.  Statement of Julio Palacio Martinez, Exh. 7 at 1989, 1993 (RAMB 0001953, 0001957).

- Some of the victims of surveillance were directed confronted by Martinelli Berrocal himself.  For example, witness Erasmo Pinilla Castillero, a justice of the Panamanian Electoral Tribunal, was shown an e-mail taken from the brad.pty e-mail account dated April 29, 2012, and recognized it as an email exchange that he had had with the Democratic Revolutionary Party Leaders Mitchell Doens and Hugo Guiraud, who were requesting the intervention of the Tribunal so that the National Sports Institute would allow the use of a gymnasium to hold a political event.  Exh. 9 at 2577-78 (RAMB002545-46).  Later, Martinelli Berrocal complained to Justice Pinilla Castillero about that email exchange, and the witness replied to him that what the Democratic Revolutionary Party had requested is the usual support that the Electoral Tribunal gave to all political parties.  *Id.* at 2579 (RAMB002547).  At that point, the witness realized that the contents of the email exchange had been brought to Martinelli Berrocal's attention.  *Id.*

- Yassir Purcait, a member of the Panama Democratic Revolutionary Party, testified that on an unspecified date in 2010 or 2011, the witness was summoned to the President's Office to have a conversation with Martinelli Berrocal.  Martinelli Berrocal played for him a series of recordings relating to an attempt on the witness's life that Martinelli Berrocal had saved on his computer.  Exh. 9 at 2513-16, 2518-19 (RAMB002481-84, 2486-87).  Martinelli Berrocal told Purcait that he was not intercepting Purcait, but Purcait understood this as an acknowledgement that Martinelli Berrocal could make recordings of the witness if he wanted to.  *Id.*  Indeed, Purcait's fears ultimately came to be realized.  During the course of the investigation, Purcait was shown an email by prosecutors and recognized as his own a number of different private communications, including a June 13, 2012, e-mail containing a conversation through an instant messaging system between him and a Juan David Morgan regarding discussion of a law in the National Assembly concerning the maritime sector, and an April 23, 2012, e-mail containing a conversation through an instant messaging system between him and a friend named Carlos Young.  *Id.* at 2519-20 (RAMB002487-88).

- Upon learning of the existence of interceptions of their private conversations, the victims responded with a range of emotions, including shock, anger, sadness, and frustration.  One of the most revealing reactions came from Ms. Zulay Rodriguez, whose private conversations with her husband regarding her alleged infidelity were published on YouTube:

I feel raped, like a victim of rape, I am not surprised anymore, because this people made fun of me, when I listened to them talking even when I was talking over the telephone, I am altered, annoyed, upset, I feel helpless, this is depressing to me, how these mobs and criminals, got into my private personal life, they intercepted

BBPIN's, chats, Whatsapp's, emails, they took me photographs pursuing me, those photographs, it can be seen that they took them; because no one around me took them, and that these security departments; instead of using the technology to chase criminals, they mess up with us as opponents, our private lives, chasing us 24 hours a day, they watched my conversations with other political leaders, with lawyers, colleagues, with my father, with my cousin Renee, they saw our family issues, the cases I was handling with other lawyers, information that I had with journalists of the media, with union leaders, they were chasing with the activists and party leaders I held meetings with, they got into my personal banking accounts where my checks are, and above all that, they used information of my email, to upload news into their TV channels Panama America and NEXTV.  Statement of Zulay Rodriguez, Exh. 8 at 2390 (RAMB002355).