# EXHIBIT 1

[Page 7 of pdf file:]

# REPUBLIC OF PANAMA

## JUDICIARY

The undersigned Clerk of Courts of the Eighth Criminal Court of the First Judicial Court of Panama, at the request of the interested party,

### STATES FOR THE RECORD:

That this Court Office is currently evaluating the legal merit of the criminal proceeding submitted by the Anti-Corruption Division of the Attorney General's Office of Panama resulting from the presumed loss of equipment by the company M.L.M. Protection LTD. against Messrs. GUSTAVO ADOLFO PEREZ DE LA OSSA, GIACOMO TAMBURRELLI, ALEJANDRO GARUZ RECUERO, RONNY RODRÍGUEZ, and WILLIAM PITTY for the presumed commission of a crime against the Public Administration, specifically EMBEZZLEMENT, according to the criminal complaint presented by Mr. Rolando López Pérez in his capacity as Executive Secretary of the National Security Council.

This case, which was initiated by the Anti-Corruption Division of the Attorney General's Office of Panama, does not contain a record of investigations related to the company "NSO GROUP TECHNOLOGIES LTD. (Pegasus)" regarding a crime AGAINST THE INVIOLABILITY OF CONFIDENTIALITY AND THE RIGHT TO PRIVACY (i.e., wiretapping of private communications)."

Panama, August 21, 2017

[signature]

Mr. Rafael Enrique Vázquez Pallares

Clerk of Courts II

[Text in seal at lower right:]

REPUBLIC OF PANAMA; JUDICIARY; EIGHTH CRIMINAL COURT OF PANAMA

[Page 9 of pdf file]

Case 1:17-cv-22197-EGT Document 63-2 Entered on FLSD Docket 08/22/2017 Page 2 of 7

## STATEMENT OF ROBERTO J. MORENO

1. My name is Roberto J. Moreno. I am making this statement at the request of the attorneys who represent Ricardo Martinelli Berrocal in the extradition proceeding regarding his person that is currently in progress in the District Court of the Southern District of Florida of the United States, case number 17-221979-MC-TORRES.

2. I am competent to make the present statement. My professional qualifications have previously been presented to this Court.

3. I have been provided a copy of the statement dated August 17, 2017, and signed by Prosecuting Magistrate Harry Díaz, regarding which I make the following declaration.

4. It is true that it is possible for the crime of Embezzlement to be committed regarding the property of individual persons, as stated by Magistrate Díaz in number 20 of his statement. However, said property of individuals must have been placed in the custody of a public servant pursuant to his or her duties.

5. The most common or typical example would be that of a Police Officer to whom a Judge, pursuant to a warrant, assigns custody of evidence regarding a crime (e.g., weapons or money). Another example would be that of an individual administrator designated by a judge to maintain custody of either disputed property or the property of a drug trafficker. In both of these cases, the crime of embezzlement may be committed if the persons holding custody seize the weapons or personal property in their custody.

6. The proper evidence capable of establishing if the property which is the subject of investigation in the extradition proceeding of Ricardo Martinelli Berrocal belonged to the State, and of determining who held custody of said property, can only be provided by the entity that holds the inventory of property assigned to the Security Council – the Comptroller General of the Republic – via an Auditing Report. Moreover, any economic harm that may have been suffered by the State via the appropriation, misappropriation, and even the misuse of the property will be determined by the Auditing Report.

7. This report must establish beyond any shadow of a doubt the person or persons who held custody of the property, for merely establishing that the property belonged to the State will not be sufficient grounds to accuse any government official of embezzlement. It also will not suffice that the perpetrator merely be a government official. Embezzlement can only be committed by the person holding custody of the property, as established by the criminal offense and jurisprudence.

8. In other words, the perpetrator of the criminal offense defined in Articles 338 and 341 of the Criminal Code susceptible of having committed said crime is a qualified subject. The perpetrator cannot be just any person, because he or she must be a public servant.

(MORENO – CRIMINAL OFFENSES 1)

[Page 10 of pdf file]

Case 1:17-cv-22197-EGT Document 63-2 Entered on FLSD Docket 08/22/2017 Page 3 of 7

In addition, it cannot be just any public servant; It has to be a public servant who holds direct and personal responsibility for the custody of the property that has been misappropriated, appropriated, or misused.

Article 338 of the Penal Code: "A public servant who in any way purloins or misappropriates, or who consents in any way to another's appropriation, purloining, or misappropriation of money, securities, or property **whose administration, receipt, or custody have been entrusted to them pursuant to their duties,** will be sanctioned with a prison term ranging from four to ten years. If the amount of the appropriated items exceeds the sum of one hundred thousand balboas (B/.100,000.00), or if the money, securities, or property appropriated were earmarked for public aid or development, or for social support programs, the sentence will be from between eight and fifteen years in prison."

Article 341 of the Penal Code: "A **public servant** who, for purposes not pursuant to their duties, uses for their own or another's benefit, or allows another person to use money, securities, or property **for which they bear responsibility pursuant to their duties, or of which they have custody,** will be sanctioned with a prison term of between one and three years, or its equivalent in day fines or weekend detention.

The same sentence will be applied to a public servant who uses official work or services for their own benefit, or who allows another to do so."

9. Mireya Moscoso, who had served as president of Panama during the period 1999-2004, was investigated as a Representative of the Central American Parliament (Parlacen) by the Supreme Court of Justice or the alleged crime of Embezzlement. In the judgment of November 18, 2009, the Plenary Session of the Supreme Court of Justice, as the Adjudicating Tribunal (Case No. 1204-04) established the importance of the auditing report in the following terms:

The Attorney General's Office of Panama, upon its own initiative, began investigations regarding the alleged mismanagement of public funds by private foundations, especially the "Mar del Sur" Foundation, which was accused of having received the sum of seventy million dollars donated by the government of the Republic of China (Taiwan) to the government of Panama.

The investigation relied on statements on October 6, 2004 by the Comptroller General of the Republic before the Plenary Session of the Legislative Assembly in which he indicated that the funds donated to the government of Panama were public in nature, and that the administrators of the "Mar del Sur" Foundation violated the law by managing these funds as if they were private, thus averting the oversight of the Comptroller General."

…

"The information collected by the Attorney General's Office until the time of the delivery of the case file to this Corporation of Justice confirms that the donation from the Republic of China (Taiwan) to the government of Panama had indeed been managed by the "Mar del Sur" Foundation.

The summary contains no evidence establishing that former president MIREYA MOSCOSO either belonged to or benefited from that Foundation.

(MORENO, CRIMINAL OFFENSES, 1)

[Page 11 of pdf file]

Case 1:17-cv-22197-EGT Document 63-2 Entered on FLSD Docket 08/22/2017 Page 4 of 7

The summary was included in Special Auditing Report number 335-003-2007/DAG-DAAG, which was drafted by the Comptroller General of the Republic, and which concerned "the management of account number 02-02-0713-2, of the Foundation for Comprehensive Child and Adolescent Education ["*Fundación Pro Educación Integral de la Niñez y la Juventud*"] and account number 02-94-0379-1 of the Association for Charitable Endeavors ["*Asociación Pro Obras de Beneficiencia*"] in which the public funds donated by the Republic of China (Taiwan) to the Government of Panama were deposited. These funds were used in the construction of the Tucán Museum, the restoration of the National Theatre, the restoration and conservation of the San Felipe de Neri Church (CAPRECOS), and the restoration of the Metropolitan Cathedral (CAPRECAME). Funds donated by Taiwan to the Government of Panama and deposited in account number 02-94-0379 by Taiwan were also donated to the Roberto Kelly Foundation, the "*Nata de Caballeros Siglo XXI*" foundation, and to other foundations, and these funds were managed by the Foundation for Comprehensive Child and Adolescent Education.

**That report identified the persons associated with the irregularities detected by the auditors, and MIREYA MOSCOSO was not included among these persons**." (emphasis added)

10. In other words, it is not enough to merely have a report of the Comptroller General of the Republic. Said report must also mention and link the perpetrator with state property by virtue of their role or position.

11. The Supreme Court of Justice has also closed proceedings for alleged embezzlement as a result of lack of timely receipt of an Auditing Report as a necessary piece of evidence. This circumstance occurred in the proceedings initiated as a result of the complaint presented by José de los Santos Pimentel against the former president of the University of Panama Gustavo García (case no. 346-D, ruling issued on February 6, 2014) which established the following:

The summaries began with the criminal complaint presented by José de Los Santos Pimentel Bernal against the President of the University of Panama Gustavo García de Paredes Aued and others for diversion of self-managed funds of the University of Panama to a non-governmental organization called the "University of Panamá Foundation."

…

After the events giving rise to this matter and the opinion of the Attorney General's office were known, the Court proceeded analyzing the records of this proceeding in order to determine if there was anything of probative value to determine whether a crime had been committed against the Public Administration, and to arrive at a resolution in accordance with the law.

The complaint presented by José de Los Santos Pimental Bernal is based on alleged acts committed by Gustavo García de Paredes, President of the University of Panama, and others involving the diversion of self-managed funds of the University of Panama to a non-governmental organization called the University of Panama Foundation.

There is a record that the office issuing the summary requested that the Comptroller General's Office of the Republic throught note PGN-SS-2078-11 of December 29, 2011, later reiterated by Note No. PGN-SS-1536-12 of October 8, 2012 with the purpose of obtaining a special audit for Self-Managed Funds of the University of Panama in order to make a determination regarding the reported events.
(MORENO – CRIMINAL OFFENSES 1)

[page 12 of pdf file]

**Given the foregoing circumstances, despite the actions that were undertaken, the punishable act reported by José de Los Santos Pimentel Bernal could not be established, given the fact that the term had expired to conclude the investigation – including the extension granted by this Court – <u>without the auditing report having been obtained</u>.**

**By virtue of the foregoing, the present judicial body is of the opinion that, given the lack of a piece of evidence that is indispensible for providing security and certainty for the purpose of filing an information of the commission of a crime against the Public Administration on the part of the government official against whom the complaint was brought, it is now appropriate to follow the recommendation of the prosecutor and decree a provisional objective and impersonal dismissal without prejudice."**

12. In other words, there cannot be a valid summary without a report of the Comptroller General of the Republic being included in the case file.

13. Similarly, the Criminal Court of the Supreme Court of Justice, in analyzing the criminal offense of Embezzlement of private property by police officers in custody of said property, explained in its judgment of January 14, 2000, in the criminal process that was conducted in reference to Orlando Moreno Murillo and others, that if there is no custody of the property, it is possible that the crime of theft or some other crime – but not embezzlement – may have been committed:

    "In the early morning hours of February 25, 1996, the crime of theft of approximately sixty-three thousand dollars (B/.63,000.00) from the "El Fuerte de San Miguelito" was committed. Afterward, the miscreant entered a taxi driven by DIOMEDES MONTENEGRO with the stolen money. Minutes later, the vehicle was pulled over by members of the National Police (Sgt. SEBASTIÁN GONZÁLEZ and Cpt. PEDRO JARAMILLO and NICOLÁS ORTEGA). A subsequent search resulted in the discovery of firearms and the aforementioned amount of money in the trunk of the vehicle.

    Without having been contacted via police radio, Second Lt. VÍCTOR OSPINO and Sgt. RAFAEL BUTLER appeared at the scene, and proceeded to divide among themselves the money that was the product of the illegal act committed in the commercial entity described above.

    The accused men were sentenced to six (6) years in prison for the crime of EMBEZZLEMENT.

    As regards PEDRO JUAN JARAMILLO, the appellant contended that the description of the events did not conform to the criminal offense charged, namely the charge of EMBEZZLEMENT that was used because the accused were government officials, leaving aside the disposition that collects the facts deployed by the accused, which according to the appellant, is that of 'Illegal Profiting from the Product of a Crime.' The appellant indicates that the violated statute in this case is called 'infraction of the substantive criminal law as a result of improper application of the latter to the case being adjudicated.'"

    …

    The *Ad Quem* to uphold judgment holds that the criteria for the conduct displayed by PEDRO JUAN JARAMILLO and OTHERS fell under the crime of EMBEZZLEMENT because, at the time the two men were apprehended, they were exercising public functions and held custody of the property recovered as a result of the illegal action, said property not having been handed over to the proper legal authority.

    (MORENO – CRIMINAL OFFENSES 1)
    [page 13 of pdf file]

In light of these contentions, this Court agrees with the criteria employed by the appeals court, given that **Article 322 of the Penal Code requires as a precondition not only that the perpetrator hold the capacity of public servant, but also that the property** have been entrusted to him by reason of his position, **given the fact that if a public servant works for the State, it is in fact the latter, in its capacity as employer, that authorizes public servants to administer, receive, or hold custody of "that property."**

14. The Criminal Court of the Supreme Court of Justice expressed the same opinion in its ruling of June 27, 2012 (Case No. 57-G), concerning the prosecution of José Antonio Jaén for Theft, indicating that embezzlement is not committed simply by virtue of the perpetrator being a public servant, but also it is required custody of the property:
"Article 322 of the Penal Code of 1982 classified the crime of embezzlement as follows:
"Article 322. A **public servant** who in any way purloins or misappropriates, or who consents in any way to another's appropriation or purloining money or property whose administration, receipt, or custody have been entrusted to him pursuant to his position, will be sanctioned with a imprisonment ranging from 3 to 10 years. If the amount of the appropriated items exceeds the sum of five hundred thousand balboas (B/.500,000.00), the sentence will be between 5 and 15 years.
If, prior to the issuance of the official document formally commencing the trial, the party responsible for the crime returns the money or property appropriated, the sentence will be reduced by one half. If the party does so following the issuance of said document and prior to the ruling of the trial court, the sentence will be reduced by one third."

The following three elements may be inferred from the definition of the criminal offense presented above: 1. The condition of the qualified perpetrator (i.e., said individual must be a person who holds the position of a public servant); 2. <u>The functional relationship of said individual with the property or monies, pursuant to their position in the Public Administration</u>; 3. Carrying out the action of "purloining" or "misappropriating" money or property within the sphere of custody of the Public Administration.
Given these considerations, it seems appropriate to ask the following question: Is it sufficient that the perpetrator be a public servant for the crime of embezzlement to have occurred? The response to this question is in the negative, for that person must not only act in that capacity, but it must also be established that <u>the person executing the action is that person who has been entrusted with (has a functional relationship with) the administration or custody of property or money</u>, whether public or private (as is the case at hand, in which the rice that had been sold belonged to an individual person).
**Under that assumption, there is no evidence in the record of the proceedings that the accused was the administrator or the person in custody of the products or property** (i.e., the rice), given that a copy of the certificate of appointment and tenure of office (page 8 of the case file) reveals that the accused himself worked in the Institute of Agricultural and Fisheries Marketing as an Industrial Machine Operator whose duties included warehousing. Said capacity of the accused is also established in the statement of the Regional Director of the Institute of Agricultural and Fisheries Marketing, who has declared to the investigative authority that he did not exercise said function, while also explaining that, in order to deliver any product, "...there must be a request order from the owner of the product, an authorization from the accounting department to the director of the plant to deliver the product, reporting the delivery to the weigher and dispatcher..., procedures that were omitted" (page3, Volume I)

MORENO – CRIMINAL OFFENSES 1
[page 14 of pdf file]

For the foregoing reasons, this Court holds that the accused, JOSÉ ANTONIO JAÉN can hardly be sanctioned for the crime of embezzlement, given that his crime falls within the definition of the crime of aggravated theft (Article 183, no. 1 of the Penal Code of 1982), a crime for which he was rightfully sanctioned by the Superior Tribunal.

1. As regards the elements of the criminal offense, the Criminal Court of the Supreme Court of Justice of Panama has been consistent in upholding, as it did in its ruling of January 23, 1995 in the trial of Marylin Díaz de León, the following:

"Regarding the aforegoing statements, the Court needs to remember that, in accordance with the text of the substantive penal rule which has been identified as having been violated, the defining characteristics of the criminal offense of embezzlement are as follows: a) **The capacity of the agent or perpetrator, said person must hold the position of a public servant; b) The functional relationship with the goods, securities, or objects whose administration, receipt, or custody have been entrusted to them pursuant to the duties they perform in the Public Administration; c) The performance of the conduct envisaged in the governing verb, in this case: "to appropriate," in its sense of disposing of, with *"animus domini,"* of things and property under one's administration or custody; d) The legal purpose, constituted by the public administration, which is no more than "the security of public or private property entrusted to government officials pursuant to their duties.** The essence of the crime is the breach of the duty of probity to which government officials are subjected in relation to public or private funds entrusted to them pursuant to their positions (see Muñoz Rubio, Campo Elías. *El Peculado,* Litho impresora, Panama, p. 34); e) The material object, constituted by the monies, securities, properties, or other objects under the administration, receipt, or custody of a public servant."

2. We conclude by reiterating that it is indispensible that the accused hold custody of the property that is the object of embezzlement, and that said object must be related to the perpetrator by virtue of his role or position in order for this crime to have been committed. Moreover, the Supreme Court of Justice has repeatedly established the need to have an Auditing Report to accuse of the crime of embezzlement, and even to establish the existence of said crime.

I declare under penalty of perjury that the foregoing statement is true and accurate. Date of statement: August 22, 2017

[signature]
**Roberto J. Moreno, L.L.M.**
**Identification Number: 8-280-162**

(MORENO – CRIMINAL OFFENSES 1)

\*\*\*

### TRANSLATOR STATEMENT

I hereby affirm that the text on this and the preceding six pages represents an official judicial translation of pages from a document in the Spanish language that I have been provided. I have translated said material to the best of my knowledge and professional abilities.

Robert A. Forstag, MA    August 29, 2017
Robert A. Forstag, MA       Date
American Translators Association Member 231005
(Certified, Spanish-to-English)
State-Certified Court Interpreter (Supreme Court of Ohio)
Spanish as a Foreign Language Diploma (DELE) C-2 (Superior)